**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **MARY MADISON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 15-cv-2290** |
| **KENCO LOGISTIC SERVICES, et. al.,** | |
| **Defendants.** | |

**DEFENDANT'S ANSWERS AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Kenco Logistics Services, ("Defendant" or "Kenco"), by and through its attorneys, Jody W. Moran and Julia P. Argentieri of Jackson Lewis P.C., for its Answers and Defenses to Plaintiff Mary Madison's Complaint of Employment Discrimination ("Complaint"), states as follows:

**PARAGRAPH NO. 1:**

Plaintiff does demand a jury trial.

**ANSWER**:    The statement in Paragraph 1 is not directed at Defendant and does not require a response.

## I.    PARTIES

**PARAGRAPH NO.2:**

The plaintiff is Mary Madison, whose street address is 9758 South Charles, (city) Chicago (state) IL (ZIP) 60643.

(Plaintiff's telephone number) (773)297-9569

**ANSWER**:    Upon information and belief, Kenco admits the allegations in Paragraph 2.

**PARAGRAPH NO.3:**

The defendant is Kenco Logistics Services, a Tennessee Limited Liability Company, Mars, Inc., Kelvin Walsh, whose street address is 2001 Riverside Drive, (city) Chattanooga, (state) TN (zip) 37406.

(Defendant's telephone number) (423) 756-5552.

**ANSWER**:    Kenco admits that Defendant Kenco Logistic Services LLC is a Tennessee Limited Liability Company, with a street address of 2001 Riverside Drive, Chattanooga, TN 37406. Kenco further admits that Kenco's phone number is (423)756-5552. Kenco denies the remaining allegations in Paragraph 3.

**PARAGRAPH NO.4:**

The alleged discrimination occurred at Mars-Manteno Facility 1125 W. Sycamore, Road (city) Manteno (state) IL (ZIP) 60950.

**ANSWER**:    Kenco admits that Plaintiff worked for Kenco at a Mars-Manteno facility located at 1125 W. Sycamore Road in Manteno, IL 60950. Kenco denies that Plaintiff was discriminated against at that site and further denies that any discrimination took place there. Kenco denies all remaining allegations in Paragraph 4.

**PARAGRAPH NO.5:**

The plaintiff (***check one box***)

a) ☐    was denied employment by the defendant.
b) ☐    was hired and is still employed by the defendant.
c) ☑    was employed but is no longer employed by the defendant.

**ANSWER**:    Kenco admits the allegations contained in Paragraph 5 with respect to Defendant Kenco. Kenco denies all remaining allegations in Paragraph 5.

**PARAGRAPH NO.6:**

The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) May (day) 13th, (year) 2013.

2

**ANSWER**:    Kenco denies the allegations contained in Paragraph 6 and denies that any discrimination occurred.

## II.    JURISDICTION

**PARAGRAPH NO.7:**

Jurisdiction over this claim is based on 28 U.S.C.§1331. Plaintiff alleges that the defendant(s) discriminated against Plaintiff because of Plaintiff's:

- ☑ Age (Age Discrimination Employment Act, 29 U.S.C. §621).
- ☐ Color (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e)
- ☐ Disability (Americans with Disabilities Act or Rehabilitation Act, 42 U.S.C. §12101 and/or The Rehabilitation Act, 29 U.S.C. §701)
- ☐ National Origin (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e)
- ☑ Race (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e)
- ☑ Race (42 U.S.C. §1981)
- ☐ Religion (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e)
- ☑ Sex/Gender (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e)
- ☐ Sex/Gender (Equal Pay Act, 29 U.S.C. §206)
- ☐ Use of Leave (Family and Medical Leave Act, 29 U.S.C. §2611)
- ☑ Other (List): Conspiracy, Intentional and Willful Interference, Aiding and Abetting.

**ANSWER:**    Kenco admits that federal jurisdiction is proper over these claims based on 28 U.S.C. §1331. Kenco admits that Plaintiff alleges age discrimination, race discrimination (under Title VII and 42 U.S.C. §1981), sex discrimination, conspiracy, intentional and willful interference and aiding and abetting in this lawsuit. Kenco denies that Plaintiff exhausted her administrative remedies with respect to age discrimination and therefore denies that this court has discrimination over that claim, as set forth in Defendant's Motion to Dismiss.  Kenco denies the remaining allegations in Paragraph 7.

**PARAGRAPH NO.8:**

Plaintiff has filed a charge before the United States Equal Employment Opportunity Commission (EEOC) relating to this claim of employment discrimination. **[Attach a copy of charge to this complaint.]**

**ANSWER**:    Kenco admits the allegations in Paragraph 8.

3

**PARAGRAPH NO.9:**

Plaintiff has filed a charge before the Illinois Department of Human Rights (IDHR) relating to this claim of employment discrimination. **[Attach a copy of charge to this complaint.]**

**ANSWER**:     Kenco admits the allegations in Paragraph 9.

**PARAGRAPH NO.10:**

Plaintiff has received a Right to Sue Notice. If yes, Plaintiff's Right to Sue Notice was received on or about (date) September 8, 2015. **[Attach a copy of Notice of Right to Sue to this complaint.]**

**ANSWER**:     Defendant admits that a Notice of Right to Sue was mailed on or about September 4, 2014. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

### III.     FACTS IN SUPPORT OF CLAIM

**PARAGRAPH NO.11:**

The defendant intentionally discriminated against Plaintiff **[check only those that apply]:**

|   |   |   |
|---|---|---|
| a) | ☐ | by failing to hire the plaintiff |
| b) | ☐ | by terminating the plaintiff's employment |
| c) | ☐ | by failing to promote the plaintiff |
| d) | ☑ | by failing to stop harassment |
| e) | ☐ | by failing to reasonably accommodate the plaintiff's disabilities |
| f) | ☐ | by failing to reasonably accommodate the plaintiff's religion |
| g) | ☑ | by retaliating against the plaintiff because the plaintiff did something to assert rights protect by the laws |
| h) | ☑ | by coercing, intimidating, threatening or interfering with the plaintiff's exercise or enjoyment of rights |
| i) | ☑ | with respect to the compensation, terms, conditions, or privileges of employment |
| j) | ☑ | other (specify): Hostile and Animus Work Environment Based on Race, Misrepresentation, Intentional Infliction of Emotional Distress. |

**ANSWER**:     Kenco denies the allegations in Paragraph 11, including denying all sub-paragraphs 11(a)-11(j).

4

**PARAGRAPH NO.12:**

State here briefly and as clearly as possible the essential facts of your claim. Describe precisely how each defendant in this action is involved. Give dates and places. Concentrate on describing as clearly and simply as possible what employment action or situation you allege to have been illegal and how it violated your rights. It is not necessary to make legal arguments or city any cases or statutes (See attached).

**ANSWER:**    Kenco incorporates and re-states its answers to Plaintiff's allegations in Paragraphs 1-101 of Plaintiff's factual allegations attached to the Complaint as though stated herein.

**PARAGRAPH 13:**  THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply]*

a) ☐  Direct the defendant to hire the plaintiff.
b) ☐  Direct the defendant to re-employ the plaintiff.
c) ☐  Direct the defendant to promote the plaintiff.
d) ☐  Direct the defendant to reasonably accommodate the plaintiff's religion.
e) ☐  Direct the defendant to reasonably accommodate the plaintiff's disabilities.
f) ☐  Direct the defendant to (specify) _____.
g) ☑  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs including reasonable attorney fees and expert witness fees.
h) ☑  Grant such other relief as the Court may find appropriate.

**ANSWER:**  Kenco denies all allegations in Paragraph 13 and denies that Plaintiff is entitled to any relief.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Madison has complied with the administrative prerequisites of §506 of the Civil Rights Act of 1964, as amended, 42 U.S.C.§§2000e-5 as follows:

1.    On or about, August 29, 2013, MADISON timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission (hereafter "EEOC") as Charge Numbers 2014CF0475 and 21B-02013-02440 respectively.

5

**ANSWER**: On information and belief, Kenco admits the allegations in Paragraph 1[1].

2.    MADISON promptly and diligently accommodated all IDHR and EEOC requests for information and fully cooperated in the agency's investigation of this matter.

**ANSWER**: Kenco lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 2, and therefore denies the same.

3.    MADISON has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and MADISON formally requested a Notice of Right to Sue from EEOC on September 4, 2015, respectively.  No administrative prerequisites are requested before a plaintiff files a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C.§1981.

**ANSWER:**  Kenco admits that Plaintiff filed an administrative charge related to some of the

allegations in Plaintiff's complaint prior to instituting this Civil Action. Kenco denies that

Plaintiff exhausted all available administrative remedies and denies all remaining allegations in

Paragraph 3.

## IV.    FACTUAL ALLEGATIONS

4.    MADISON was employed with KENCO on or about May 13, 2013, as a Quality Engineer, for 3rd party management company whom at all times acted as agents of Mars, Inc., beginning on April 21, 2013.

**ANSWER**: Keno denies that Kenco at any time acted as an agent of Mars, Inc. Kenco admits the

remaining allegations in Paragraph 4.

5.    At all relevant times, Defendant KENCO employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks in 2013, 2014 and 2015.

**ANSWER**:    Kenco admits that Defendant Kenco Logistic Service, LLC employed in excess of

15 employees for at least 20 calendar weeks in 2013, 2014 and 2015.

---

[1] Plaintiff's Complaint labels the allegations Paragraph 1-13 and then re-starts again with Paragraph 1. This means there are two sets of allegations/answers to Paragraphs 1-13. Defendant's answers therefore follow the same numbering scheme as Plaintiff's complaint.

6.      At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of MADISON's employment were governed and controlled by Defendant KENCO.

**ANSWER**: Kenco admits the allegations in Paragraph 6.


7.      At all relevant times MADISON possessed the skills, experience and qualifications necessary to work in her employment position and adequately and completely performed all of the functions, duties and responsibilities of her employment with Defendant KENCO.

**ANSWER**:      Kenco denies the allegations in Paragraph 7.


8.      KENCO, upon information and belief was acting as the agent of Mars and in its conduct and actions as alleged herein and was acting in a capacity within the scope of its authority, or, if said conduct was outside the scope of its authority, said conduct was known, authorized and ratified by Mars.

**ANSWER**:      Kenco denies the allegations in Paragraph 8.


9.      At all times, Kelvin Walsh, ("Walsh"), a White, American male, held the position of General Manager.  Walsh was in a position of authority to undertake tangible employment decisions and/or control the terms and conditions of MADISON's employment with Defendant KENCO.

**ANSWER**:      Kenco admits that Kelvin Walsh is a white, male and previously held the position of General Manager at Kenco. Kenco further admits that Walsh possessed some degree of supervisory authority over Plaintiff. Kenco denies the remaining allegations in Paragraph 9.


10.      At all relevant times, Walsh, acting on behalf of Kenco the managing agent for Mars, Inc. directed and approved all operational activities, including but not limited to: hiring, pay, scheduling, performance management, workflow and the like.

**ANSWER**:      Kenco admits that Walsh directed various activities including hiring, pay, scheduling, performance management and workflow while employed as General Manager at Kenco. Kenco denies the remaining allegations in Paragraph 10.


11.      Immediately upon MADISON's hire, on or about May 13, 2013, without reason, MADISON was subjected to Unequal terms and conditions of employment through the

withholding of relevant and germane information needed to perform MADISON's job. Specifically, MADISON asked Walsh for all Mars Audit findings and other pertinent information. Walsh denied having such information.

**ANSWER**: Kenco denies the allegations in Paragraph 11.

12.     In addition, MADISON was never given any specific Work Instructions (WI), assignments benchmarks, goals or plans of action by Walsh. Upon information and belief, when persons are on boarded at any workplace, expectations and information are disseminated to the hires.

**ANSWER**: Kenco denies that Madison was never given any specific work instructions. Kenco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12, and therefore denies the same.

13.     MADISON relied upon the information given to her during her interviews with Corporate Quality and Paula Here, VP of Operations, the information cited on the job posting, as well as, her professional experience and expertise to bring compliance to the Mars Manteno Facility.

**ANSWER**: Kenco states that Paula Hise was the Group Vice President at Kenco, and Hise was involved in interviewing Madison. Kenco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and therefore denies the same.

14.     Over the next several days from May 14-17 2013, MADISON implemented audits and developed various policies to identify gaps, bring correction, as well as, ultimately compliance to the FDA Mandates.

**ANSWER**:     Kenco denies the allegations in Paragraph 14.

15.     These audits and policies were submitted to Walsh for review and meeting requests were made for review and final approval, as well as, for the impending audit.

**ANSWER**:     Kenco denies the allegations in Paragraph 15.

16.     Walsh would not comply too the meeting request for review and final approval.

**ANSWER**:    Kenco denies the allegations in Paragraph 16.

17. During the audit, it was discovered that the sanitation was non-compliant for the following reasons; Cleanliness was a major factor. For example, the bathrooms had fecal matter on the floors, were untidy and unsightly and that the cleaning service, Service Master, used the same mops to clean the facility as they used in the bathrooms. In addition, the bathrooms did not have signs for employees to wash their hands.

**ANSWER**:    Kenco admits that Plaintiff complained that the bathrooms were not clean. Kenco

denies the remaining allegations in Paragraph 17.

18.    Sanitation is of the utmost, especially in food grade facilities, and is a mandate of the FDA, FSMS, Code of Federal Regulations, and other Public Health and Safety laws, as it is a matter of public safety and health. Failure to follow proper food sanitation can result in the spread of disease, and can cause severe illness or even death.

**ANSWER**:    Kenco states that the statement in Paragraph 18 is non-factual and conclusory and

is not directed at Kenco and therefore, no response is required. To the extent that a response is

required, Defendant denies the allegations in Paragraph 18.

19.    Corporate regulatory affairs, specialist, was at the facility and a meeting was conducted on or about May 21, 2013 with Service Master in regards to the lack of Sanitation. A Memorandum of Understanding (MOU) was set forth regarding the meeting and the expectations set in regards to the sanitation of the facility and the current FDA Mandates, as well as opportunities for improvement on both sides.

**ANSWER**:    Kenco admits that Plaintiff met with Service Master and prepared an MOU

following the meeting. Kenco denies the remaining allegations in Paragraph 19.

20. On or about May 27, 2013, only after the corporate regulatory affairs specialist contacted

Walsh did he finally agreed to set up and commence meetings.

**ANSWER**:    Kenco denies the allegations in Paragraph 20.

21. On or about May 29, 2013, a meeting ensued, but did not address the mandated and

impending issues.

**ANSWER**:    Kenco lacks knowledge sufficient to form a belief as to the truth of the allegation

that a meeting occurred on May 29, 2013 and therefore denies the same. Kenco denies all

remaining allegations in Paragraph 21.

22.    From May 13 through July 17, 2013, Walsh vehemently denied on at least six (6) documented occasions of not having the relevant information needed to prepare for the upcoming and impending 90 day audit, as well as, refusing to review, meet and approve the policies and procedures set forth for federal compliance.

**ANSWER**:    Kenco denies the allegations in Paragraph 22.

23.    On or about July 19, 2013, MADISON was again subjected to unequal terms and conditions of employment, harassed, minimalized and reprimanded for corresponding with the quality counterpart, Matt Chick, at Mars regarding the information that had been sought by MADISON from Walsh and by Clifford Tracie from Matt Chick. Walsh stated the following:

> "As covered during your performance review, you need to engage in dialog with your follow site managers. Specifically your site GM. If asked, I could have provided you detailed answers to your inquires below. By going directly to the customer it gives an appearance that Defendant KENCO does not have an understanding of the business. And or it raises questions as to what measures may be lacking. In addition, it is Defendant KENCO's responsibility to ensure we are utilizing the resources provided by MARS. In final, to question the customer that their QA manual is dated was completely inappropriate."

**ANSWER**:    Kenco admits that something similar to the quotation above was stated by Walsh

in an email to Madison. Kenco denies the remaining allegations in Paragraph 23.

24.    Chick indicated that the site should be in possession of the information since on or about August 2012; Chick readily supplied it to MADISON.

**ANSWER**:    Kenco lacks knowledge or information sufficient to form a belief as to the truth of

the statement in Paragraph 24 and therefore denies the same.

25.    MADISON opposed such treatment by responding on or about July 21, 2013:

> "On (6) six known separate occasions, in various open forums, you have denied having any foreknowledge of CAPA's: Please see below……….."
> In addition, since this information is available and can it be provided by

you; please forward this information, as we have been in need of it for some time now.

Last, but not least the most important factor in this query was Ms. Tracie, who asked in the July 17, 2013 meeting the disposition of the records and the likes. Whereby the existence of the records were denied.  As a direct result of the denial of such records. Ms. Tracie initiated this request for information and clarification prior to her departure. As a direct result of this query, Matt Chick forwarded some information, but it did not resolve the questions at hand; therefore, prompting a re-request of Ms. Tracie's original request."

**ANSWER**:    Kenco lacks knowledge or information sufficient to form a belief as to the truth of the statements in Paragraph 25 and therefore denies the same.

26.    MADISON was further again subjected to unequal terms and conditions of employment, harassment, minimization, retaliation and harsher scrutiny in that Walsh forbade MADISON not to communicate with Chick again.

**ANSWER**:    Kenco admits that Walsh told Madison to communicate with him prior to reaching out directly to Mars with questions, in order to make sure Kenco did not have the information already. Kenco denies the remaining allegations in Paragraph 26.

27.    Moreover, under normal circumstances the Quality person would be in contact with the corresponding Quality Person without any willful and intentional interference this was not the case, as Walsh purposely obstructed that business relationship.

**ANSWER**:    Kenco denies the allegations in Paragraph 27.

28.    After MADISON's opposition, unbeknownst to MADISON, Walsh conspired in an email against MADISON to say that he had provided and supplied that information previously.

**ANSWER**:    Kenco denies the allegations in Paragraph 28.

29.    Madison continued to be the victim of unequal terms and conditions of employment, harassed, minimization, retaliation and harsher scrutiny.  The oversight of Quality, including, but not limited to sanitation, the facility, policies, and procedures were under MADISON's governance. On or about June 24, 2013, Madison was instructed by Here to place Service Master on a ten (10) day remediation plan due to their continued non-compliance, as well as, to take Request for Proposals (RFP's), in the event Service Master did not comply.

**ANSWER**:    Kenco admits that Madison was instructed to place Service Master on a 10 day remediation plan on or about June 24, 2013 by Paula Hise. Kenco denies the remaining allegations in Paragraph 29.

30.    On or about June 25, 2013, Walsh asked MADISON to relax her standards in regards to Service Master, as this is the way it had been done with the previous owner and that he knew what Mars wanted and to not be concerned.

**ANSWER**:    Kenco denies the allegations in Paragraph 30.

31.    MADISON refused and it was explained to her the seriousness and gravity of the matter at hand; that people could become ill and even die, that it was against the law, and that we could lose our jobs, as well as, that the standards being implemented are federal guidelines and in order to be in compliance at all times with these mandate, as well as, with the customer requirements, the standards much be adhered to; failure to do so would be unlawful; not to mention that the willful and intentional misconduct would be egregious and negligent. It was also conveyed that Paula Here had stated that Service Master should be placed on a ten (10) day remediation plan.

**ANSWER**:    Kenco admits that Paula Hise asked that Service Master be placed on a ten day remediation plan. Kenco denies the remaining allegations in Paragraph 31.

32.    Mr. Walsh went on to say that Service Master did not understand and that he would be willing to accept the responsibility for any adverse circumstance surrounding this relaxation of standard.

**ANSWER**:    Kenco denies the allegations in Paragraph 32.

33.    MADISON reported this misconduct to the corporate regulatory affairs specialist; who in turn reported it to Paula Here.

**ANSWER**:    Kenco admits that Madison complained about Service Master having an opportunity to correct deficiencies prior to the contract being cancelled.  Kenco denies the remaining allegations in Paragraph 33.

34.    MADISON also reported this Human Resource Personnel on or about June 25, 2013, along with how she felt as though she was being treated differently because of her sex and race.

**ANSWER**:     Kenco denies the allegations in Paragraph 34.


35.     As directed by Here MADISON set a meeting with Service Master for on or about June 27, 2013 to place them on a 10 remediation plan.

**ANSWER**:     Kenco admits that Paula Hise directed Madison to set up a meeting with Service Master on or about June 27, 2013 regarding placing them on a 10 day remediation plan. Kenco denies the remaining allegations in Paragraph 35.


36.     Immediately prior to the meeting, Walsh cancelled the meeting; with no explanation. Consequently, the ten (10) day remediation plan was not implemented.

**ANSWER**:     Kenco admits that Walsh canceled the meeting. Kenco denies the remaining allegations in Paragraph 36.


37.     Shortly thereafter, on or about July 2, 2013, an employee had reported that the sanitation had degraded to point where the bathrooms and the break room had become a breeding ground for flies.

**ANSWER**:     Kenco lacks knowledge or information sufficient to form a belief as to the truth of the statements in Paragraph 37 and therefore denies the same.


38.     Walsh called a meeting on or about July 5, 2013 with Service Master, MADISON and Mike Manzello. Walsh began to chastise, berate and humiliate MADISON in the meeting, accursing MADISON of being hostile and insensitive towards Service Master. MADISON was mandated by Walsh to devise a plan of action to help them become complaint. This was not within the scope of MADISON'S job to manager vendor businesses.

**ANSWER**:     Kenco admits that a meeting took place on or about July 5, 2013 where Madison was asked to devise a plan of action for Service Master. Kenco denies the remaining allegations in Paragraph 38.


39.     Several days later, on or about July 8, 2013, MADISON was called into a meeting with Walsh and Leonard Szplett, Human Resource Manager.

**ANSWER**:     Upon information and belief, Kenco admits the allegations in Paragraph 39.

40.    MADISON was presented with a Performance Improvement Plan (PIP). The justification given was that MADISON was audit compliant as to why the plan was being administered.

**ANSWER**:    Kenco admits that Madison was presented with a Performance Improvement Plan

(PIP). Kenco denies the remaining allegations in Paragraph 40.

41.    Pointedly, MADISON had never been given any specific Work Instructions (WI), assignments benchmarks, goals or plans of action by Walsh, nor had he reviewed the work that had been submitted by MADISON to that date.

**ANSWER**:    Kenco denies the allegations in Paragraph 41.

42.    The PIP as allegedly presented to MADISON was to represent a legitimate non-discriminatory pretext for plaintiffs discipline and termination.

**ANSWER**:    Kenco denies the allegations in Paragraph 42.

43.    However, the PIP as presented did not meet the minimum standards outlined by the Society of Human Resources (SHRM) Performance Management Standard.

**ANSWER**:    Kenco lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 43 and therefore denies the same.

44.    PIP's are part of a Performance Management system and are typically used in a progressive discipline process and is usually party of a (3) three part phase to correct persistent performance problems in accordance with a documented procedure according to SHRM's Performance Management Standard.

**ANSWER**:    Kenco lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 44 and therefore denies the same.

45.    No previous disciplinary actions, coaching, or mentoring had occurred or been taken by respondent nor was it party of a progressive discipline process.

**ANSWER**:    Kenco denies the allegations in Paragraph 45.

46.    More specifically, it lacked and/or was deficient in 7 of 9 components to meet the minimum standards according to SHRM's Performance Management Standard.

14

***The plan as presented did not contain:***

1. Official Company logo, address, etc…
2. Form, document, or control number (Control Procedure – (CP)-KQMS) QMS Documentation CP-BP-4.2.1.001
3. Associated policies, procedures, or protocols that support the use of this form (ISO)-KQMS) Controlled Documents-ISO-BP-4.2.3.001 or is it referenced in the Control of Records-ISO-QE-4.2.4.001 or the Index of Quality Records-ISO-QE-43537001-1, as well as, being catalogued in Appendix F that references all procedures, policies, and forms for the KENCO group.
4. Reference to previously discussed issues, discrepancies, or gaps
5. Missed deadlines
6. Cited company policy/procedural violations
7. Quantifiable, factual, or accurate information of accounts and events
8. Adequate remediation of allege allegations in terms of remedy or time allotted.
9. Examples or notations of work incompetency's, errors, omissions, deficiencies, and discrepancies.
10. Factual or creditable occurrences or instances

**ANSWER**:     Kenco states that the allegations in Paragraph 46 are vague and confusing and do not require a response. To the extent that a response is required, Kenco admits that the PIP Plaintiff received did not contain all of the above information in it. Kenco denies that it is bound by SHRM's Performance Management Standards in creating a Performance Improvement Plan (PIP) and denies all remaining allegations in Paragraph 46.


47.     Matter of fact the PIP was riddle and comprised of subjective criteria and lacked any substantial, creditable, tangible, or quantifiable instances to legitimize its fundamental existence. To further affirm and support this subjectivity the plan contained and cited competencies, which is not a part of a PIP, but are indicative of a Performance Management Review. Competencies are not part of a PIP according to SHRM.

**ANSWER**:     Kenco denies the allegations in Paragraph 47.


48.     Furthermore, a significant amount of competencies cited were not relevant to the performance requirements, duties, or execution of plaintiff's position as a Quality Engineer that were to be used as benchmarks for the sustainability of employment that exceeded and were outside the expected area of employed expertise; For example, Financial Management-EIP, Performance Management, Employment Law, and Systems Capability of Desktop Systems.

**ANSWER**:     Kenco denies the allegations in Paragraph 48.

49.    Defendant KENCO follows the ISO 9001:2008 modeling according to the Defendant KENCO Corporate Responsibility report. Therefore, the Defendant KENCO QMS documentation policy governs all documentation CP.BP.4.2.1.001. Consequently, each policy, procedure and form are document controlled and subjected to a document number, titling, date, revision number, indexing, and cataloguing. They are catalogued in detail in Appendix F. Forms are designated with a hyphen after the corresponding procedure number.

**ANSWER**:    Kenco admits the allegations in Paragraph 49.


50.    To prevent and circumvent deviations such as the use of the legitimate non-discriminatory PIP, any deviation from the standardized process, procedure, or protocol requires an approved exception. The Exception Form CP.QE.4.2.1.001-2 requires a valid business reason and case to deviate from the established procedure for approval consideration according to the QMS Documentation procedure CP.BP.4.2.1.001.

**ANSWER**:    Kenco admits that Plaintiff has accurately cited Kenco's policies, but Kenco denies that there was any deviation from policies or protocols. Kenco denies all remaining allegations in Paragraph 50.


51.    The PIP issued did not follow the Defendant KENCO Quality Management System-KQMS. The form is not listed in Appendix F and therefore is not a valid recognized procedural form by Defendant KENCO. Mr. Walsh affirmed that he knew Defendant KENCO forms were only to be used.

**ANSWER**:    Kenco denies the allegations in Paragraph 51.


52.    Consequently, due to the lack of alleged policies and procedures related to the PIP it becomes inherently obvious that based upon the PIP's fundamental basis to meet the minimum requirements of SHRM this allege legitimate non-discriminatory PIP was then specifically created for plaintiff, as there is no traceable evidence of its existence in the documented, indexed, catalogued inventory of cross-referenced documents, Appendix F; once again, illegitimatizing the legitimate non-discriminatory non-pretext PIP to termination theories.

**ANSWER**:    Kenco denies the allegations in Paragraph 52.


53.    Upon information and belief, it would be safe that the use of a PIP with these benchmarks have not been used with similarly situated employees including but not limited to white, non-black, non-African Americans, over 40 years of age. These intimidating and coercive antics are an abuse of power authority rank and discretion.

**ANSWER**:    Kenco denies the allegations in Paragraph 53.

54.    MADISON was never given a plan of action to become complaint; this is a subsequent measure to a PIP; despite her having to devise one for Service Master on or about July8, 2013.

**ANSWER**:    Kenco denies the allegations in Paragraph 54.

55.    MADISON objected to such treatment on or about July 23, 2013, when MADISON wrote a written response to Defendant Walsh and indicated that she felt as though she had been treated differently than others. Hise and Szplett were carbon copied on this correspondence.

**ANSWER**:    Kenco admits that Plaintiff objected in writing to the performance improvement

plan. Kenco denies the remaining allegations in Paragraph 55.

56.    Further subjugation to discrimination, harassment and retaliation occurred Defendant KENCO's Walsh continued to purport this legitimate non-discriminatory pretext for plaintiffs discipline and termination by following up with an email reprimand as an intimidation tactic through the abusive of her authority on or about July 19, 2013 for requesting information from Mars Quality, after being contacted by the Mars Quality Manager Matt Chick.

**ANSWER**:    Kenco denies the allegations in Paragraph 56.

57.    Ironically, according, to Mr. Walsh's harassing reprimand, Mr. Walsh acknowledges and admits to having had the needed information and that it could have been supplied if only asked for. However, the reality is that Mr. Walsh intentionally obstructed, withheld and refused to disseminate this information as to be burdensome, as well as, a tortious interference within the confines of the business scope of work to be performed. Thereby, maliciously causing intentional, strain, conflict and damage to the business relationships at hand by preventing or impeding the implementation and/or execution of the terms of contractual agreement between MADISON and Defendant KENCO in delivering a Regulatory complaint, audit ready facility for the impending customer audit and performance review; which ultimately and directly affects Defendant KENCO's contractual agreement of having an Regulatory complaint facility towards Mars, as well as, other housed customers, through the unconscionable willful and intentional stifling dissemination of information that in reality obstructed not only the contractual obligations, as well as, impeding or preventing the compliance of legal mandates, which is illegal and unethical at best.

**ANSWER**: Kenco denies the allegations in Paragraph 57.

58.    Other examples of Mr. Walsh's intimidating, abusive, and offensive behavior, was during a meeting on or about June 12, 2013, with Ms. Here, Mr. Marquez, Mr. Walsh and MADISON, a handout was presented regarding GMP's for the facility. During the presentation,

Mr. Walsh interrupts very abruptly stating that there is a misspelled word, actually a malapropism; that it should be ensure instead of insure, on the GMP document.

**ANSWER**:    Kenco admits that meetings took place to discuss Good Manufacturing Practices

(GMP's) on or about June, 2013. Kenco denies the remaining allegations in Paragraph 58.

59.    In an another open forum with the HACCP Team, while the meeting was being conducted regarding HACCP implantation on July 26, 2013, when it was stated that there would be monthly meetings, Mr. Walsh again, abruptly interrupted and stated although we were having this meeting, don't look to have any other meetings and it would be at least some months before the issue would be revisited again, as time did not permit.

**ANSWER**:    Kenco denies the allegations in Paragraph 59.

60.    In addition, Mr. Walsh's intentional and constant refusal to host meetings, as well as, declining and cancellation of meetings was also abusive, discriminative, humiliating, harassive, minimalizing, and undermining, as well as, the creation of an animus and hostile work environment. For example, ISO Training meeting request was sent out, Mr. Walsh declined the meeting at 9:42 am due to having meetings all day with Mars. Then ironically within 9 minutes and a series of email exchanges he was able to now attend at the same exact time, when the email came from a white, non-black, non-African American.

**ANSWER**:    Kenco denies the allegations in Paragraph 60.

61.    Matter of fact, from May 31, 2013 Mr. Walsh did not conduct any meetings for the upcoming audit and declined a number of meetings, as well as, having not reviewed numerous policies and procedures presented that were needed for the upcoming audit. More specifically, on or about July 9, 2013, Mr. Walsh stated in an email, that the business scope had changed and that training would have to be tabled, another prime example of the continue disparate treatment and impact imposed upon MADISON.

**ANSWER**:    Kenco denies the allegations in Paragraph 61.

62.    Another notable instance, was whereby, there was an intentional exclusion of the Traceability Processes and Audit, which an integral part of Food Safety and Defense, especially in the event of product recall for various reasons, such as, but not limited to, adulteration, contamination, and/or spoilage, as well as, lost or stolen pallets of product.

**ANSWER**:    Kenco denies the allegations in Paragraph 62.

63.    Defendant KENCO, Kelvin Walsh, and its attorney Miller & Martin knowingly and willfully obstructed and impeded the administration of justice with respect to the

investigation(s) by making statement(s) of position to IDHR and OSHA that were riddled with false, misleading, materially deceptive, fraudulent, and highly pervasive statements. This is in direct violation of Obstruction of Justice: OBSTRUCTION OF PROCEEDINGS BEFORE DEPARTMENTS, AGENCIES, AND COMMITTEES.

**ANSWER**:    Kenco admits that Kenco filed position statements with the IDHR and OSHA

related to Plaintiff's allegations. Kenco denies the remaining allegations in Paragraph 63.

64.    Defendant KENCO, Tammi Fowler, Corporate HR and its attorney Miller & Martin knowingly demonstrated a reckless disregard for the truth through Edith McCurry's, an African American, female, role reduction and minimization to a clerk, as opposed to her HR Administrator role, with a conscientious purpose to avoid the truth being learned to circumvent culpability through providing highly pervasive mistruths to IDHR and OSHA bot government regulatory agencies.

**ANSWER**:    Kenco denies the allegations in Paragraph 64.

65.    Defendant KENCO, Kelvin Walsh, Paula Here, and its attorney Miller and Martin stating that they we unaware of direct evidence and protected class activity; 25 documented times presented with direct evidence and protected class activity.

**ANSWER**:    Kenco denies the allegations in Paragraph 65.

66.    Defendant KENCO, Tammi Fowler, Corporate HR and its attorney Miller and Martin knowingly Presented information that was not noted in the PIP as an example of work performance; the instances presented to the regulatory agency were never addressed in the PIP; consequently plaintiff was never apprised of any work performance issues.

**ANSWER**:    Kenco denies the allegations in Paragraph 66.

67.    Defendant KENCO, Kelvin Walsh, and its attorney Miller and Martin knowingly, intentionally and willful continued to conspire through the minimization of Edith McCurry's responsibilities and role to a clerk, knowingly, intentionally and willfully omitting her from the witness list and replacing her with a representative that they believed would not opposed disparate and disparate treatment and impact and presenting mistruths to intentionally avoid culpability, as well as, conspiring on what say/response in regards to Kelvin Walsh's admonishment/admission of being in possession of information, since August 2012, sought by plaintiff since 5.13.14 that was needed to perform job duties that he had denied having until 7.19.14.

**ANSWER:**    Kenco denies the allegations in Paragraph 67.

68.    Defendant KENCO, Tammi Fowler, Corporate HR and its attorney Miller & Martin made perjurious and prevaricated statements regarding policies and procedures stating that the PIP was a form used consistently for years and given by corporate HR, Tammi Fowler to Kelvin Walsh; all forms are documented, listed and numbered on appendix F from corporate.

**ANSWER**:    Kenco denies the allegations in Paragraph 68.


69.    In addition, Defendant KENCO intentionally, willfully, and knowingly stated to the IDHR that they do not have a termination process, as well as, a PIP policy while presenting a general disciplinary policy, as the only governing policy relating to the matter at hand for non-exempt employees; when in fact there is a termination process policy is CP-HR-6.1.002 and the associated form is CP-HR-6.1.002-1.

**ANSWER**:    Kenco admits that Kenco has a termination process policy and an associated form.

Kenco denies the remaining allegations in Paragraph 69.


70.    PIP is a metric of a Performance Management; the Performance Management Policy for Exempt employees is CP-HR-6.2.2.009 and its associated forms are CP-HR-6.2.2.009-1 thru 4 and 6. Moreover, under the standardization of ISO a form cannot exist without a corresponding policy or procedure.

**ANSWER**:    Kenco admits that Performance Improvement Plans (PIPs) are a metric of performance management. Kenco further admits that Kenco has a performance management policy for exempt employees, CH-HR-6.2.2.009 and associated forms CP-HR-6.2.2.009-1 thru 4 and 6. Kenco denies the remaining allegations in Paragraph 70.


71.    Therefore, this PIP as presented does not exist, is not a valid and approved form used by Defendant KENCO and cannot and should not have been used as it violates the company policy as it relates to the Quality Management System (QMS) Documentation Control Procedure-CP-BP-4.2.1.001 and the exception form CP-BP-4.2.1.001-2 associated with the procedure. Consequently, the statements made are in direct violation of the False Statement Accountability Act and Perjury, as policies and forms exist that directly correlates to the request that was made with by the IDHR; these policies are indexed in Appendix F.

**ANSWER**:    Kenco denies the allegations in Paragraph 71.


72.    Defendant KENCO, Kelvin Walsh, and its attorney Miller and Martin knowingly, intentionally and willfully slandering, maligning, and subjugating me to harsher scrutiny to relieve culpability of the situation, as well as, conspiring to interfere against one's civil rights.

**ANSWER**:     Kenco denies the allegations in Paragraph 72.


73.     Defendant KENCO and it's attorney's Miller & Martin continue to knowingly, intentionally and willfully obstructed and imped the administration of justice through a number of things that have not been correct, or disingenuous, or outright lies a number of times, and it is been shown by submitted emails and written documentation, such as, but not limited to: The Respondents opposition to plaintiffs motion for additional time to the Human Rights Commission, Conspiracy between Kelvin Walsh and Tracie Clifford to redress the retort to Mr. Walsh's admittance of having the necessary information as requested several months prior, as well as, outright lying and saying that the company does not have a termination policy, that "Defendant KENCO does not have a performance plan policy for exempt employees; it has a general disciplinary policy that it follows for non-exempt employees, but this policy does not apply to exempt employees and would not have applied to Ms. Madison. Indeed, the form that was given to Mr. Walsh to use with Ms. Madison was provided by Ms. Fowler, who confirms that this is the process that Defendant KENCO has utilized for several years in order to address performance issues with exempt employees." The termination and performance management policies can be located on Appendix F. Furthermore, there is no general disciplinary policy for non-exempt employees.

**ANSWER**:     Kenco admits that Kenco explained in Kenco's response to the IDHR

Questionnaire that Kenco does not have a written discharge policy for exempt employees.

Kenco denies the remaining allegations in Paragraph 73.


74.     Defendant KENCO, Kelvin Walsh, and its attorney Miller & Martin knowingly and willfully engaged in pretextual and prevaricated occurrences, when Edith McCurry, HR Administrator, was willfully and intentionally left off the Defendant KENCO's witness list for the fact finding conference in regards to the charges filed.

**ANSWER**:     Kenco denies the allegations in Paragraph 74.


75.     In addition, Defendant KENCO continued to subjugate Ms. McCurry to unequal terms and conditions of employment, as they continued to degenerate, degrade, dehumanize, marginalize and discriminate against Ms. McCurry by willfully and intentionally characterizing her as a Clerk a substantially lower position in functionality and skill than her current position, as well as, retorting case law in the November 22, 2013 correspondence to the IDHR to support the fact that Ms. McCurry was not in a position of authority to accept and be apprised of such information in an official capacity, but merely in a mode of friendship.

**ANSWER**:     Kenco denies the allegations in Paragraph 75.

76.     However, according to Kenco Connection's Website Kenco Group HR Contact List Ms. McCurry is listed as the HR Administrator. Ms. McCurry's job description signed by Len Spzlett her immediate supervisor has Ms. McCurry job title as HR Administrator, as opposed to the job posting presented by respondent to the IDHR and other regulatory agencies.

**ANSWER**:     Kenco denies the allegations in Paragraph 76.


77.     McCurry signed in at the fact finding conference on March 18, 2014 as the HR Administrator for the respondent.

**ANSWER**:     Kenco lacks knowledge or information sufficient to form a basis as to the truth of

the allegation in Paragraph 78 and therefore denies the same.


78.     Defendant KENCO intentionally and willfully conspired to prevaricate the omission, minimization and characterization of Ms. McCurry in this investigation; which is an obstruction of justice, as well as, conspiring to circumvent culpability, predicated on a non-pretext basis to cover-up the discrimination, retaliation, and continued victimization endured by the plaintiff by willfully and intentionally stating in the company's position of statement, that even if Ms. McCurry was told of this disparate and disparaging treatment it was in a comradery capacity and context, coupled with Ms. McCurry's allege positionality and functionality within the company would relieve the company of any fiduciary or legal responsibility or accountability.

**ANSWER**:     Kenco denies the allegations in Paragraph 78.


79.     Conflictingly, respondent also stated in its position statement that complaint specifically instructed Ms. McCurry not to do anything at all about what was being reported. If in fact Ms. McCurry was unable, incapable, or positionally defunct to carry out this task or endeavor, it would be materially apparent, given and understood that Ms. McCurry had no authority to act. Therefore, to purport such as a defense or matter of fact is a shear absurdity and an insult.

**ANSWER**:     Kenco denies the allegations in Paragraph 79.


80.     Furthermore, plaintiff and defendant's HR Administrator never had a conversation whereby plaintiff instructed Ms. McCurry to not to do anything about what was being reported and such a statement is a flat out lie.

**ANSWER**:     Kenco denies the allegations in Paragraph 80.


81.     After MADISON began questioning, complaining and reporting the matters to HR and corporate, Walsh, Defendant KENCO's then General Manager at the Manteno facility,

and in turn KENCO, became more openly hostile, retaliatory and discriminatory towards MADISON. In addition, MADISON continued to be the victim of unequal terms and condition of employment in that he was subjected to ostracisms and public humiliation, relative to similarly situated white, non-black, non-African American male managers and co-workers.

**ANSWER**:    Kenco denies the allegations in Paragraph 81.

82.    Defendant KENCO sought every opportunity to treat MADISON unfairly in relation to her similarly situated, white, non-black, non-African American co-workers and to diminish her authority and expertise.

**ANSWER**:    Kenco denies the allegations in Paragraph 82.

83.    On or about June 25, 2013, MADISON took action against the hostile and discriminatory treatment that was being directed toward her by Defendant KENCO. MADISON contacted the Manteno onsite Human Resources personnel complaining about the hostile, discriminatory; disparate treatment, as well as, writing to Here, the then VP of Operations.

**ANSWER**:    Kenco denies that Madison ever complained in writing to Paula Hise about discrimination or hostile work environment and denies all remaining allegations in Paragraph 83.

84.    Upon information and belier, MADISON's alteration and reduction in performance management was against the normal practices of the Defendant KENCO with respect to such alleged discrepancies and as such, violated Defendants normal due process afforded to affected parties. Defendant's KENCO punitive actions directed toward MADISON was motivated by a racial animus, discrimination and retaliation, and was unjustified and violative of her rights under Federal and the state of Illinois anti-discrimination laws.

**ANSWER**:    Kenco denies the allegations in Paragraph 84.

85.    Upon information and belief, MADISON's similarly situated, white, non-black, non-African American co-workers were not subjected to humiliation, harassed, and punished in such a manner. Additionally, upon information and belief, Plaintiff was the only staff in her Department affected by the humiliation, harassment and punitive measures directed toward her. None of MADISON's similarly situated, white, non-black, non-African American co-workers were humiliated, harassed and subjected to such punitive measures.

**ANSWER**:    Kenco admits that none of Madison's co-workers were humiliated, harassed or otherwise mistreated. Kenco denies all remaining allegations in Paragraph 85 and denies that Plaintiff was ever humiliated, harassed or punished.

86.     Defendant KENCO's policies dictate that when such information and discrepancies occur within the facility, proper company protocol and procedure is to be followed as it relates to the Standard Operating Procedure.

**ANSWER**:    Kenco denies the allegations in Paragraph 86.

87.     Such pervasive and blatant discriminatory, hostile and disparate treatment by Defendant KENCO, gave rise to a rash and harassment from other employees and subordinates.

**ANSWER**:    Kenco denies the allegations in Paragraph 87.

88.     On or about July 5, 2014 MADISON was verbally harassed and publicly humiliated by Walsh.

**ANSWER**:    Kenco denies the allegations in Paragraph 88.

89.     MADISON, along with those who opposed such treatment, were subjected to discriminatory treatment.

**ANSWER**:    Kenco denies the allegations in Paragraph 89.

90.     MADISON was paid a salary and at times eligible bonuses. As part of her employment compensation package, she also received or was entitled to medical benefits, insurance, Paid Time Off as well as other benefits.

**ANSWER**:    Kenco admits the allegations in Paragraph 90.

91.     MADISON was continually harassed and retaliated against throughout her tenure of employment with Defendant KENCO.

**ANSWER**:    Kenco denies the allegations in Paragraph 91.

92.     While employed by Defendant KENCO, MADISON was the victim of race discrimination, harassment and retaliation. MADISON is an African American female. Due to her race he was treated differently from other similarly situated non-black, non-African American employees in the terms and conditions of her employment. Upon information and belief, MADISON alleges that he and other African American co-workers belonging to protected classes pursuant to the federal and the state of Illinois anti-Employment Discrimination law were held to different standards than other employees of Defendant.

**ANSWER**:    Kenco admits that Plaintiff is an African-American female. Kenco denies the

remaining allegations in Paragraph 92.


93.    MADISON upon information and belief, alleges that African Americans and
other employees that are members of the protected class have substantially lower employment
and retention rates at KENCO, due to unfavorable terms, conditions and privileges of
employment, such as, (1) lack of equal opportunity; (2) unfair and poor treatment; (3) less
tolerance and leniency when making adverse employment decisions, amongst other things.
MADISON believes KENCO has a disproportionately lower number of African American
employees in various management level positions.

MADISON, upon information and belief, alleges that there were substantially more non-
African American employees, especially in management level positions, at the Manteno facility,
as well as, other facilities. The non-African American employees at the Manteno facility were
treated much more favorably than MADISON and other African American employees.

**ANSWER**:    Kenco denies the allegations in Paragraph 93.


94.    In 2103, MADISON was unfairly singled out and treated differently from her
non-African American colleagues due to her race. MADISON's employment eventually ended
on August 9, 2013.  The reason given by Defendant KENCO for MADISON's discharge was
due to not meeting the expectations of the PIP.

In fact, Defendant KENCO knew that it had no just cause to harass, impose pay
disparities; economic sanctions; retaliate against and deny MADISON of opportunities for
employment when it: (1) falsely accused MADISON of not being audit complaint; (2)
misrepresented her ability and skills in the performance of her job; and (3) misrepresented to her
and misled her to believe that KENCO had conducted an unbiased investigation, when she had
reported the various misconducts.

**ANSWER**:    Kenco admits that Plaintiff was terminated on August 9, 2013 for performance

reasons, including failing to improve after receiving the Performance Improvement Plan. Kenco

denies the remaining allegations in Paragraph 94.


95.    Defendant KENCO failed to completely and fairly investigate the disparate and
disparaging treatment and impact in an unbiased manner, and instead, chose to completely ignore
MADISON and failed to remediate and mitigate the situations at hand. Defendant KENCO
maliciously and intentionally failed to follow up with any of MADISON's witnesses and follow
company policy with respect to the incident while intentionally misrepresenting to MADISON
that a fair and unbiased investigation had been conducted. This caused substantial damage to

MAADISON. MADISON, upon information and belief, alleges that her race; perceived sexual orientation and retaliation were substantial motivating factors in Defendant KENCO's.

**ANSWER**:     Kenco denies the allegations in Paragraph 95.


96.     (1) Refusal to properly investigate the facts and information provided by MADISON; (2) Failure to treat MADISON and other similarly situated non-white employees of Defendant KENCO fairly with respect to any adverse employment decisions; (3) Defendant's failure to follow its policies, custom and past practice, as it related to the investigation of alleged misconduct; (4) Defendant's failure to follow its policies, custom and past practice as it relates to anti-harassment and ethics; and (6) its decision to continue to subject MADISON to hostile and discriminatory treatment.

**ANSWER**:     Kenco denies the allegations in Paragraph 96.


97.     On or about November 22, 2013, Defendant KENCO willfully submitted false and inconsistent information to Regulatory and Public Policy agencies. Such as, but not limited to Illinois Department of Human Rights and OSHA.

**ANSWER**:     Kenco denies the allegations in Paragraph 97.


98.     Defendant KENCO's actions toward MADISON were unlawful, malicious, deceptive, defamatory, slanderous, fraudulent and contrary to principles of fairness and common decency. Defendant intentionally misrepresented to Plaintiff her job's compensation and that they had conducted a fair and impartial investigation. This was not the case. Moreover, MADISON, upon information and belief, alleges that other similarly situated, non-black, non-African American co-worker were not subjected to such treatment.

**ANSWER**:     Kenco denies the allegations in Paragraph 98.


99.     Defendant KENCO has a history and predisposition of falsifying documents, deception, fraud, coercion, retaliation, adverse employment decisions, unequal terms and conditions of employment, discriminant, disparaging and disparate treatment and impact, systemic discrimination, disproportionate assignment of harder work assignments, lack of opportunities for training and advancement, as well as, more frequent and severe discipline for minorities.

**ANSWER**:     Kenco denies the allegations in Paragraph 99.


100.     Defendant KENCO has an admitted and documented pattern and practice of disparate treatment towards African Americans.

**ANSWER**:     Kenco denies the allegations in Paragraph 100.

101.    This type of blatant systemic discrimination is a precursor to the disparate, discriminant, and retaliatory treatment imposed upon Defendant KENCO's protected class.

**ANSWER**:    Kenco denies the allegations in Paragraph 101.

## DEFENSES

1.    To the extent Plaintiff purports to assert claims of discrimination or retaliation that were not included in the Charge that he filed with the EEOC (and cross-filed with the IDHR), Plaintiff has failed to exhaust his administrative remedies and any claim associated with the alleged conduct is barred and should be dismissed.

2.    To the extent Plaintiff seeks to recover for alleged discrimination or retaliation which occurred more than 300 days before she filed her EEOC charge, such claims are time-barred and should be dismissed.

3.    All actions affecting Plaintiff and/or the terms or conditions of her employment were taken for legitimate, non-discriminatory, and non-retaliatory reasons and, as such, did not violate any legal rights possessed by Plaintiff.

4.    Plaintiff's claim for any damages must be eliminated or reduced to the extent that she is, has been, or will be compensated from collateral sources.

5.    Any claims Plaintiff has for damages in the form of back pay, front pay, and benefits are barred to the extent he has failed to seek other employment diligently or otherwise to mitigate his damages. Furthermore, Plaintiff's claim for front-pay is barred after February 28, 2015 when Kenco's contract with Mars was terminated and therefore Kenco was forced to eliminate all positions at Plaintiff's work site.

6.    Defendant acted reasonably and in good faith, and not in willful violation of the civil rights statutes at issue in this action; accordingly, Plaintiff is barred from recovering punitive or liquidated damages.

27

7.      Defendant expressly reserves the right to assert additional affirmative defenses and revise the defenses asserted herein as it learns additional relevant facts during the course of this litigation.

8.      To the extent any employee, manager, supervisor, director, or officer of Kenco's engaged in any unlawful conduct as described in Plaintiff's Complaint, such actions were outside the scope and course of their employment and were not in furtherance of Kenco's business.

**WHEREFORE**, Defendant, Kenco Logistic Services, respectfully requests Plaintiff's Complaint be dismissed with prejudice, and for any additional relief deemed just and appropriate.

Dated:  May 17, 2016                        **KENCO LOGISTICS SERVICES**

By:  /s/ Julia P. Argentieri
One of its Attorneys

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 N. Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Phone: (312) 787-4949
Fax: (312) 787-4995
moranj@jacksonlewis.com
julia.argentieri@jacksonlewis.com

28

## CETIFICATE OF SERVICE

I, Julia P. Argentieri, an attorney, hereby certify that on May 17, 2016, I electronically filed a copy of the foregoing **DEFENDANT'S KENCO LOGISTIC SERVICES, ANSWER AND DEFENSES TO COMPLAINT OF EMPLOYMENT DISCRIMINATION** with the Clerk of the Court using the CM/ECF system, and caused it to be mailed via U.S. Mail, postage pre-paid, and served upon:

> Mary Madison (*pro se*)
> 9758 South Charles
> Chicago, IL 60643

By: /s/ Julia P. Argentieri
One of the Attorneys for the Defendant