IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MARY MADISON | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) CASE No. 15-cv-02290-CSB-EIL |
| | ) |
| KENCO LOGISTIC SERVICES, LLC, et al. | ) |
| | ) |
| DEFENDANTS. | ) |

FILED
MAY 15 2017
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

MOTION TO COMPEL DISCOVERY FROM DEFENDANT KENCO

Pursuant to Federal Rules of Civil Procedure, specifically Rule 37, Plaintiff, Mary Madison (hereinafter "Plaintiff"), hereby moves the Court for an order compelling Defendant, Kenco (hereinafter "Defendant") to produce items and written discovery Defendant is wilfully and intentionally withholding from Plaintiff.

Defendant has a duty to disclose and refuses to do such. Defendant has made boilerplate objections that were not particularized and are not rooted or grounded in fact or law to support the position taken. Furthermore, with respect to the documents that are specifically being requested correlate to the federal mandates under the Food Safety and Modernization Act hereinafter "FSMA", specifically 21 CFR Chapter I Subchapter M.

As it stands, Defendant was mandated under FSMA 21 CFR Chapter I Subchapter M to have a written documented plan under ISO 22000 herein attached as **Exhibit A**. ISO 22000 is composed of several other building blocks including:

1. Hazard Analysis and Critical Control Points (HACCP) as defined in the Codex Food Hygiene document;
2. Prerequisite programs that define the basic conditions to maintain a hygienic environment;
3. The components that are needed to have an effective management system;
4. The final building block is based on ISO 9001:2000 and ISO 9001:2008 "Quality Management Systems – Requirements."

The statue also required Defendants to ensure that they hired a qualified and competent person. More specifically, according to the Food Drug and Cosmetic Act, herein referred to as FD&C, it is a prerequisite for a person to be qualified to perform activities under 21 CFR Chapter I Subchapter B Part 121. Consequently, this person would be a subject matter expert relative to food safety, the interpretation, application and compliance of international, global and federal statues and laws. Defendants Kenco and Mars carried out this requisite of 21 CFR Chapter I Subchapter B Part 121, The Codex Alimentarius Commission and the Global Food Safety Initiative when it hired Plaintiff to work as the Quality Engineer at the Mars Manteno Facility. Defendant ratifies this according to Defendant's Bate Stamped evidence-Quality Engineer job Description pages 1030-1033 hereto attached as **Exhibit** B.

The statue also required that a written plan be implemented and is to include but not be limited to: quality plan, food safety plan, hazard analysis, prevention controls, monitoring, corrective action, verification and associated records, corporate and any relevant site policies and organizational charts, responsibilities/authorities, documented signed and up-to-date SOP (Standard Operating Procedures)/WI (Work Instructions), Job descriptions, Human Resources, designated food safety responsibilities, as well as, a documented facility self-inspection/audit procedure, supplier program, incoming and outgoing trailer/material inspection program. In addition to a written and documented sanitation/cleaning program, preventative maintenance, comprehensive product recall, training program and the facility amongst other requirements. Defendant ratified and complied with the directives through the implementation of Defendant's QMS Documentation Policy -CP.BP.4.2.1001 hereto attached as **Exhibit C.**

The quality management system, ISO 9001:2008, follows a cataloguing scheme where each policy, procedure, protocol and form is controlled and has a document number (relative to the issuing department), title, date, effective date, revision information, author and approval information amongst other identifying matrices. These documents are correlated to one another, as well as, being comprehensively indexed in an appendix. Once again, Defendant ratified and complied with the directives through the implementation of Defendant's Control of Documents Policy-ISO.BP.4.2.3.001hereto attached as **Exhibit D.**

Each policy, procedure, protocol and associated form are vetted and verified for accuracy before approval and implementation. Each policy, procedure, protocol and form always has an associated chain of command to govern them through its life cycle as required by law and

referenced in **Exhibit C.** Moreover, every part of the supply chain from farm to fork is required to comply with the 21 CFR Chapter I Subchapter M.

According to the standard, updates to the policies, procedures, protocols and forms are made based upon a qualifying event, such as but not limited to: changes in materials, methods, procedures, regulations and the like. Updates typically occur on a routinely scheduled basis, unless some special circumstance prevails that necessitates a special or immediate update.

With regards to the quality management system there are to be no deviations within the system. Deviations from the documented Standard Operating procedures, protocols or policies would be deemed as a non-conformity. All non-conformities are documented in accordance to the standards of Continual Improvement; Continual Improvement (CI)[1] is facilitated with the help of other tools such as Lean[2] and Six Sigma or Lean Six Sigma, an analysis of this non-conformity or defect is performed. This is called a root cause analysis. The root cause analysis is a precursor to the preventative and corrective actions taken to ensure that this non-conformity or defect does not occur again. Intentional deviations from procedures, protocols or policies typically require an exception before this deviation can occur. According to Defendant's QMS Documentation Policy (CP.BP. 4.2.1001) hereto attached as **Exhibit C1** the exception request is accompanied with a written business case outlining the reasons and or rationale for the requested deviation. This written request is reviewed by another party who could be the author of the

---

[1] The Senior Continuous Improvement Engineer at Kenco was Jerry Ciriello and Defendant had a Continual Improvement Policy ISO.QE.8.5.1.001 hereto attached as **Exhibit E.**

[2] Defendant has Lean a Lean Champion Policy CP.LE.5.5.1.001 and Lean Policies-CP.LE. 8.2.3001 thru 007that are available upon request.

policy, procedure or protocol or a manager of such for written approval. All non-conformities whether foreseeable or unforeseeable are all documented in their respective logs.

Consequently, the standardization of any system under the International Organization of Standardization offers transparency, traceability, accountability, uniformity, and equality. The essence of this scheme is that you must exactly do what you say you are doing. Therefore, the deviation from any policy, procedure, protocol and or form in any way goes against the very essence of standardization.

The implementation of this system must be management driven and requires cross-functional buy-in to be successful as indicated in on page 5 Section 5 of **Exhibit A-ISO 22000**. Compliance to this mandate is commemorated by a signed commitment from management.

Defendant Kenco in tandem along with its employer Mars had policies, procedures, and protocols relative to documentation, control of documents, index of documents, as well as, the other ISO 9001:2008 and ISO 22000 Standard of requisites and prerequisites for the lawful operation of the Mars Manteno Facility. Mars proof of compliance to FSMA, other statues and laws is hereto attached as **Exhibit F.** Therefore, the adherence of the policies, procedures and protocols as presented during the relative time is inextricably linked to the compliance of the Federal Mandates of 21 CFR, FSMA, the 2002 Bioterrorism Act, the Codex Alimentarius and other Federal and International prevailing laws.

The statue has speficities with regards to record keeping, as it is mandatory, in accordance with 21 CFR Chapter I: Subchapter B Part 117 Subpart F and Part 121 Subpart D; Subchapter A

Part 1 Subpart J, FSMA and the governing standard of ISO 22000 are required to be overseen by the designated person characterized in 21 CFR Chapter I Subchapter B Part 121, which in this case for the Mars Manteno facility would have been Plaintiff. In addition, the records are to be generated, maintained, appendicized, indexed, catalogued, controlled, tethered and retained in a designated location for a specified amount of time according to 21 CFR and ISO 22000. Any records not kept in accordance, with 21 CFR Chapter I: Subchapter B Part 117 Subpart F and Part 121 Subpart D; Subchapter A Part 1 Subpart J, FSMA and the governing standard of ISO 22000 would be negligence per se, as well as, the failure to comply to the various other mandates.

Therefore, as a matter of course of ordinary business, record keeping and compliance, the discovery information requested from Defendant should have been preserved and available when Defendant was initially notified to preserve documents by the IDHR and EEOC in November of 2013 and again during the initial discovery exchange according to Rule 26 and upon receipt of the Rule 37 letter; therefore the documents were mandated according to FSMA, as well as, Rule 37 to be available to be produced upon request. Furthermore, Defendant had a Control of Records Policy- ISO. QE.4.2.4.001 hereto attached as **Exhibit G** that continued to ratify that Defendant knew that it was to be compliant to the Federal Statues and Mandates.

Defendant was properly served discovery request pursuant to the civil rules of procedures on or about February 19, 2017. Defendant was late in answering the discovery request and did not ask for an extension. Defendant was called to the carpet on the issue of the discovery being late; it was not until that time Defendant made a boiler plate objection to the discovery on April 3, 2017; hereto attached as **Exhibit H.** In all actuality Defendant cited some language from Rule 37

7

referencing the fact that discovery was harassive….. Contrarily, Defendant went on to say on the April 4, 2017 status call that Defendant was merely stating that they just needed a few more weeks to finalize the discovery. Well miraculously within two (2) days on or about Aril 6, 2017 the discovery was produced; hereto attached as **Exhibit I** and again on or about April 13, 2017 hereto attached as **Exhibit J.**

Plaintiff made sure the interrogatories met the 25 question limit according to the Rules of Civil Procedure and only requested documents specific to Plaintiff's case. Plaintiff did not request any documents that were capricious or random, but specific, germane and relevant records and documents kept ordinarily as a matter of course of business. Plaintiff is aware from Defendant's motion to compel and the courts order that there is a provision afforded under the Rules of Civil Procedure for the opportunity to request information that may not lead to admissible evidence at trial.

Defendant demonstrated that it was aware of the mandates through its policies, procedures, protocols and forms; however, Defendant intentionally and willfully misstated to Plaintiff boiler plate objections that were not particularized, rooted or grounded in either fact or law. In addition, as an Officer of the Court and subject matter experts in and of the law, Defendant's counsel knows that it has a duty to disclose and that an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond under Rule 37

Defendant was asked to reconsider their answers see hereto attached as **Exhibit K.** Defendant did not even have the courtesy to respond and did not amend their initial responses to Plaintiff's discovery request.

Plaintiff asserts that this is another one of Defendant's and Defendant's counsels contrived unethical schemes to frustrate Plaintiff, hinder adjudication, be deceptive, manipulative, fraudulent and vexatious, as well as, create other opportunities to foster punitive sanctions, apathy, hostility, animus, tension and discord between Plaintiff and the court.  Moreover, this type of unethical behaviour is a primordial catalyst to the moral decay of the fabric of a civilized society, once again intubating the subjugation of injustices of those perceived as less similarly situated, disenfranchised or able to defendant themselves.

Moreover, Plaintiff believed that the court, this court, was a gatekeeper and facilitator to equity and justice; who or that is a cross-functional technocrat of the law, upholding the very essence and principles of law.  Plaintiff has tried to not be a burden on the court by being timely, prepared, obedient and compliant to its rules, regulations and mandates, while being a self-advocate in the preservation of Plaintiff's rights as citizen of these United States to fair and unbiased adjudication.   Plaintiff apologizes to the court for my misunderstanding about the platform and forum.  With that being said, in all actuality, Plaintiff has no other place to go to lawfully resolve these matters, but the court and in no way is trying to anger or agitate the court with this request.

Plaintiff emphasizes and also reiterates that it is imperative that Defendant submit their manuals, as well as, their policies, procedures, protocols and forms in their top tier documents in Appendix F, as well as, any site manuals and policies, procedures, protocols and forms contained in Appendix A for the relevant time. These manuals, policies, procedures, protocols and forms govern and outline every action Defendant is to take, enact or has enacted.

9

These manuals, policies, procedures, protocols and forms, can be correlated to or are akin to the Civil Rules of Procedure, but are more specific and pointed in scope, as they copiously, precisely and specifically address in detail all aspects of Defendant's operations and compliance to company, vendor and public policy.

These policies, procedures, protocols, forms and documents are readily available for immediate review, as required by the aforementioned global, international and federal governing laws and should not pose a burden on Defendant. Matter of fact these records are also electronically stored by Defendant Kenco on its website Kencoconnection.com and Defendant Mars. Therefore, it is just a mere matter of printing out the relevant documents to the relevant times.

Plaintiff believes that Defendant's production of these requested materials will close the gaps, narrow down the vast ambiguity and chameleon like style of Defendant and Defendant's counsel. Plaintiff knows that these are the "smoking guns" needed to prevail. Plaintiff also believes that these documents will usher in expediency, clarity, and accountability due to the rigorous scope of independent audited compliance requirements of global, international and federal mandates.

Plaintiff believes that if Defendant is disallowed from producing these manuals, appendices, policies, procedures, protocols, forms and documents it will continue to aid and abet Defendant by giving Defendant a free pass to continue to abuse discovery, a free pass to continue to violate the Civil Rules of Procedure, a free pass to thwart Plaintiff's case, a fee pass to continue to be

deceptive, a free pass to continue to use the instruments of the court and the court itself to prejudice litigants and dissipate judicial resources, a free pass to continue to burden society, foster divisiveness, moral decay and distrust in the judicial system, along with a free reign to change its stance, story and position at will to Plaintiff's and others detriment, as well as, evade and obstruct justice and culpability.

Furthermore, Plaintiff believes that these items are discoverable, as they were the terms and conditions that governed Plaintiff's and others employment at the Mars Manteno facility and are directly proportional to the needs of this case and can be reasonably calculated to lead to admissible evidence at trial.

Additionally, due to the natural result of Defendant's intentional unwillingness to comply with its duty to disclose, manifests as a willful tactical advantage and a contrived hindrance to the discovery process and Plaintiff. Due to Defendant's actions Plaintiff has been placed in a position of potential prejudice in regard to the upcoming deposition of May 24, 2017 due to the inability to adequately and reasonably ascertain what evidence Defendant alleges to have that Plaintiff may proofer intelligent answers, arguments and/or defenses to Defendants questions, as well as, if additional discovery requests, proportional to the needs of the case, may need to be made.

**WHEREFORE,** Plaintiff respectfully requests and prays that this honorable court grant her Motion to Compel Discovery and order Defendant to immediately produce the requested written discovery and production of documents, as well as, any and all documents or other things in Defendant's custody or control relating in any way whatsoever to:

1. Plaintiff;
2. Plaintiff's employment including, but not limited to Defendant's manuals, appendices, policies, procedures, protocols, logs and forms;
3. Defendant's Standard Work and Mars Manteno signed job descriptions created by Plaintiff during the relevant times for the various positions at the Mars Manteno Facility.
4. Defendant's employment agreement(s) with Mars, Inc.
5. Defendant's general liability policy;
6. Any of Defendant's affirmative defenses;
7. This formal proceeding

Respectfully submitted,
**MARY MADISON**

By: _____
Pro Se
MARY MADISON
9758 S. Charles
Chicago, IL 60643
773.297.9569

12

CERTIFICATE OF SERVICE

Please take notice that on May 13, 2017, I, Mary Madison, hereby, certify that I did file a MOTION TO COMPEL DISCOVERY FROM DEFENDANT KENCO with the Central District of Illinois Urbana Division in the foregoing matter of Case No. 15-cv-02290-CSB-EIL and have served the persons identified on the docket's service list via Notice of Electronic Filing generated by the Court's CM/ECF system.

Pro Se
MARY MADISON
9758 S. Charles
Chicago, IL 60643
773.297.9569

| | |
|---|---|
| Kimberly J. Overbaugh | Jody Wilner Moran |
| Thomas R. Davies | Julia P. Argentieri |
| Harmon & Davies, P.C. | Jackson Lewis P.C. |
| 2306 Columbia Ave | 150 North Michigan Ave., Suite 2500 |
| Lancaster, PA 17603 | Chicago, IL 60601 |

1