IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION



MARY MADISON,

    Plaintiff,

V.

    Case No. 15-ev-2290-CSB-EIL

KENCO LOGISTIC SERVICES, et. al.,

    Defendants.

**MOTION TO DEEM FACTS ADMITTED PURSUANT TO REQUEST FOR ADMISSIONS**

COMES NOW Plaintiff, Mary Madison, pursuant to *Federal Rules of Civil Procedure, Rule 36* and *Rule 37,* and would respectfully move the Court for an Order deeming the facts admitted at the trial of this action against Defendant Kenco and for remedies under said Rules, including any other relief, and as grounds therefore would state as follows:

A. On March 19, 2017, Plaintiff herein caused to be filed a certain Request for Admission in this action, which Request, pursuant to *Rule 36, Federal Rules of Civil Procedure,* sought to have admitted the following matters by Defendant Kenco:

REQUESTS TO ADMIT

1. Admit that Kenco owns The Kenco Connection website.

2. Admit that The Kenco Connection is powered by a 3rd party vendor.

3. Admit that The Kenco Connection Website is an informational website for employees.

4. Admit that the Kenco Connection Website contains each of the following components:

    a. Best Practices
    b. Kenco Operating System
    c. Communication
    d. Company Directory
    e. Human Resources
    f. Industrial Engineering
    g. Informational Technology
    h. Kenco Accounting
    i. Quality
    j. Real Estate/Maintenance
    k. Risk Management
    l. Learning & Development
    m. Transportation
    n. Operational Excellence
    o. Training Initiative

5. Admit that during the relevant times Appendix F was found on The Kenco Connection Website.

6. Admit that Kenco Logistics has an Appendix F that catalogues all corporate policies, procedures, protocols and forms

7. Admit that Kenco Logistics has site specific policies, procedures, protocols, and forms.

8. Admit that Kenco Logistics policies, procedures, protocols, and forms are catalogued in Appendix A.

9. Admit that Kenco Logistics also has Appendices B, C, D, & E

10. Admit that Appendix D lists approved exceptions to BPs and CPs.

11. Admit that Kenco Logistics Best Practice is to update its Appendices each month on the 15th of each month.

12. Admit that Kenco Logistics also has "Special Releases" that can occur other than the 15th of the month

13. Admit that each revision to the policies, procedures, protocols, and forms listed on the Appendices are listed on each policy, procedure, protocol, and form, as well as, the title, document number, original date, revision date, revision number, effective date, author-author's signature and date, approval signature(s) and date.

14. Admit that during the relevant times each new release of a policy, procedure, protocol, and form was found on the Kenco Connection.

15. Admit that during the relevant times each revision and new release of a policy, procedure, protocol, and form was indexed monthly.

16. Admit that during the relevant times each revision and new release of a policy, procedure, protocol, and form that was indexed monthly prefaced the document name, document number, description of change, and effective date.

17. Admit that during the relevant times each revision and new release of a Human Resource policy, procedure, and/or form was indexed under the subheading of Quality on the Kenco Connection website.

18. Admit that Appendix F and Appendix A were where the policies, procedures, protocols, forms and the like were found for employees managed by Kenco.

19. Admit that defendant's policies, procedure, protocols, forms, and the like were on line at Kenco Connection.

20. Admit that defendant's policies, procedure, protocols, forms, and the like were managed on site at the Mars Manteno facility by the Quality Engineer/Coordinator.

21. Admit that defendant's quality coordinator was responsible for updating any policies, procedures, protocols, forms and the like at the Mars Manteno facility.

22. Admit that defendant's quality coordinator was responsible for the training on any policies, procedures, best practices, protocols, forms and the like at the Mars Manteno facility.

23. Admit that defendant's quality coordinator was responsible for the documented proof of training to individuals on any policies, procedures, best practices, protocols, forms and the like at the Mars Manteno facility.

24. Admit that defendant's quality coordinator kept records of training for all policies, procedures, best practices, protocols, forms, and the like per company policy.

25. Admit that defendant's quality coordinator retention of records of training on all defendant's policies, procedures, best practices, protocols, forms, and the like was defendant's policy.

26. Admit that defendant's records were kept for audit compliance.

27. Admit that defendant was audited for compliance.

28. Admit that the Mars Manteno facility was audited for compliance.

29. Admit that defendant was aware of the Food Safety and Modernization Act.

30. Admit that defendant knew the guidelines of the Food Safety and Modernization Act.

31. Admit that defendant knew of the Bioterrorism Act of 2002.

32. Admit that defendant knew of the guidelines of the Bioterrorism Act of 2002.

33. Admit that defendant knew about food defense compliance.

34. Admit that defendant knew it was regulated by the FDA.

35. Admit that defendant knew it was regulated by OSHA.

36. Admit that defendant knew compliance to the Food Safety and Modernization Act was a prerequisite to its employment with MARS, Inc.

37. Admit that defendant knew compliance to the Food Safety and Modernization Act was a term and condition of its employment with MARS, Inc.

38. Admit that defendant knew compliance to the Bioterrorism Act of 2002 was a prerequisite to its employment with MARS, Inc.

39. Admit that defendant knew compliance to the Bioterrorism Act of 2002 was a term and condition of its employment with MARS, Inc.

40. Admit that it was defendant's responsibility to inform their employer, MARS, Inc., about the charges that were filed at the IDHR.

41. Admit that defendant knew they were acting as agents for MARS, Inc.

42. Admit that defendant reported to MARS, Inc.

43. Admit that MARS, Inc. monitored its employee, Kenco.

44. Admit that MARS, Inc. monitored Kenco's work performance.

45. Admit that defendant conferred with MARS, Inc.

46. Admit that defendant took directives from MARS, Inc.

47. Admit that defendant took directives from MARS, Inc. onsite Regional Distribution Manager.

48. Admit that it was defendant's fiduciary obligation to inform MARS, Inc. under their legal contractual agreement.

49. Admit that Defendant Kenco and Defendant Mars had daily meetings regarding the operational plans to inventory, store and or distribute the Mars, Inc. products at the Mars Manteno Facility.

50. Admit that the General Manager of the Mars Manteno Facility and the Regional Distribution Manager and a CSR of Mars participated in the daily planning meetings.

51. Admit that defendant informed MARS, Inc. about the charges filed at the IDHR.

52. Admit that defendant informed MARS, Inc. about the Whistleblower complaints filed with OSHA against defendant and MARS, Inc.

53. Admit that MARS, Inc. had knowledge about the charges filed at the IDHR.

54. Admit that MARS, Inc. had knowledge about the charges filed at OSHA.

55. Admit that defendant gave MARS, Inc. an opportunity to engage in conciliation activities.

56. Admit that MARS, Inc. engaged in some form of dialogue regarding the charges filed.

57. Admit that defendant knew that submitting information to the IDHR and EEOC in the form of a verified response was under oath.

58. Admit that person with firsthand knowledge of Plaintiff's incidents was ostracized from participating in the investigation process at the IDHR and EEOC.

59. Admit that person with firsthand knowledge of the Plaintiff's incidents was not provided by defendant as having firsthand knowledge to the IDHR and EEOC.

60. Admit that persons with firsthand knowledge of Plaintiff's adverse employment decisions were ostracized by Defendant and not listed as having firsthand knowledge in these proceedings.

61. Admit that Edith McCurry was ostracized by Defendant as a witness during the IDHR and EEOC investigation.

62. Admit that Edith McCurry was interviewed by Defendant's them legal counsel Karen Smith with regards to Madison's allegations.

63. Admit that after Smith interviewed McCurry, Defendant again conspired against Plaintiff's protected rights by intentionally omitting McCurry and McCurry's accounts of Madison's allegations.

64. Admit that Smith on Defendant's behalf stated to the IDHR and EEOC that McCurry stated that Madison said to do nothing about what Madison had reported.

65. Admit that Smith stated on Defendant's behalf stated to the IDHR and EEOC that Madison had not reported any disparate or disparaging treatment and impact to McCurry.

66. Admit that Smith stated on Defendant's behalf that McCurry was only a clerk and not able to receive information or complaints about employee issues.

67. Admit that McCurry was the HR Administrator of the Mars Manteno facility.

68. Admit that McCurry had acted in the capacity of HR Administrator prior to Defendant Kenco managing the Mars Manteno Warehouse.

69. Admit that Smith on behalf of Defendant listed Leonard Szplett as a Human Resource Representative to the IDHR and EEOC with firsthand knowledge Madison's employment at the Mars Manteno Facility.

70. Admit that Leonard Szplett worked with defendant's corporate human resource department.

71. Admit that Leonard Szplett worked with defendant's corporate Senior Manager of employee relations.

72. Admit that Leonard Szplett worked with defendant's corporate Senior Manager of Employee Relations on an ongoing and regular basis.

73. Admit that Leonard Szplett had a dotted line to defendant's corporate Senior Manager of Employee Relations.

74. Admit that Leonard Szplett took directives from Tammi Fowler.

75. Admit that Tammi Fowler never met with Plaintiff prior to the Fact Finding Conference held at the IDHR on behalf of the IDHR and EEOC.

76. Admit that Szplett and McCurry worked together in Human Resources.

77. Admit that Edith McCurry was listed as defendant's HR Administrator on Kenco Connection.

78. Admit that Edith McCurry was listed as defendant's HR Administrator in defendant's directories.

79. Admit that defendant intentionally choose to apply a lesser punitive standards to non-African Americans that actually violated company and public policy.

80. Admit that Leonard Szplett was present during the administering of the PIP to Madison.

81. Admit that Leonard Spzlett was present when Madison was terminated.

82. Admit that Leonard Szplett, Kelvin Walsh and Paula Hise were emailed a response from Madison regarding the PIP.

83. Admit that Madison's response included logs and written correspondence to Walsh's PIP.

84. Admit that Madison's personnel file is missing the logs and written correspondence given in response to the PIP that was given to Madison.

85. Admit that in the email to that Leonard Szplett, Kelvin Walsh and Paula Hise that Madison stated that she felt as though she was being treated differently and not being afforded the same opportunities as others.

86. Admit that on Madison's PIP it references a letter dated July 23, 2013.

87. Admit that the letter referenced July 23, 2013 on Madison's response to the PIP is not in Madison's personnel file.

88. Admit that it is unlawful to remove documents from a person's personnel file.

89. Admit that it is also unlawful to submit as evidence fraudulent information in an investigation.

90. Admit that it was deceptive to send an altered copy Madison's personnel file to the IDHR and EEOC.

91. Admit that it was an obstruction of justice to destruct evidence.

92. Admit that it was an obstruction of justice to send altered evidence.

93. Admit that it was an obstruction of justice to send an altered copy Madison's personnel file to the IDHR and EEOC.

94. Admit that the defendant provided information to the IDHR by US Mail.

95. Admit that the defendant provided information to the IDHR by Fedex.

96. Admit that defendant's position and verified statement was under oath.

97. Admit that the defendant did not take action when violations of company and public policy were reported to Corporate.

98. Admit that defendant's reason given as a legitimate non-discriminatory reason for Madison's termination was false.

99. Admit that the there were no examples or citing's of poor performance of work performed by Madison in the PIP that was given to her.

100. Admit that the PIP was subjective in nature.

101. Admit that the BCP plan was not mentioned or cited in the PIP given to Madison.

102.  Admit that the project plan was not mentioned or cited in the PIP given to Madison.

103.  Admit that the majority of the competencies listed on the PIP did not relate to Madison's job as the Quality Engineer.

104.  Admit that Madison was the Quality Engineer.

105.  Admit that Madison was to bring oversight to the Mars Manteno Facility with regards to compliance to FDA mandates.

106.  Admit that the PIP did not follow company protocol or procedure.

107.  Admit that there was not an associated company policy to the PIP.

108.  Admit that there is to be a corresponding policy associated with any form according to company policy.

109.  Admit that each policy, procedure, protocol and form is to follow the company's documentation policy.

110.  Admit that Defendants Kenco and Mars, Inc. had management review meetings.

111.  Admit that Defendant Mars, Inc. set the KPI's (Key Performing Indicators) for Defendant Kenco.

112.  Admit that this is a true and correct copy of Defendant's QMS Documentation Policy-CP-BP-4.2.1.001Exhibit A

113.  Admit that this is a true and correct copy of Defendant's KQMS Request for Exception Form CP-BP-4.2.1.001-2 Exhibit B

114. Admit that this is a true and correct copy of Defendant's Control of Documents-ISO-BP4.23.001 Exhibit C

115. Admit that this is a true and correct copy of Defendant's Termination Process-CP-HR-6.1.002 Exhibit D

116. Admit that this is a true and correct copy of Defendant's Performance Management for Exempt Employees Policy-CP.HR.6.2.2.009  Exhibit E

## B. RULE 36 REQUESTS FOR ADMISSION

SCOPE AND PROCEDURE.

(1) Scope. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

(A) facts, the application of law to fact, or opinions about either; and

(B) the genuineness of any described documents.

(2) Form; Copy of a Document. Each matter must be separately stated. A request to admit the genuineness of a document must be accompanied by a copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying.

(3) Time to Respond; Effect of Not Responding. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

(4) Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

(5) Objections. The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

(6) Motion Regarding the Sufficiency of an Answer or Objection. The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.

(b) EFFECT OF AN ADMISSION; WITHDRAWING OR AMENDING IT. A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

C.  Attached is a true and correct copy of Plaintiff's First Set of Requests to Admit to Defendant including attachments along with the certificate of service hereto attached as **Exhibit A**.

D.  Attached is a true and correct copy of the mailing receipt and signature confirmation as proof of mailing of Plaintiff's First Set of Requests to Admit to Defendant to Defendants Kenco and Mars, Inc. respectively hereto attached as **Exhibit B.**

E.  Attached is a true and correct copy of the proof of receipt by Defendant of Plaintiff's First Set of Requests to Admit to Defendant through signature confirmation hereto attached as **Exhibit C.**

F.  Defendant did not respond or ask for any extension of time to responds to Plaintiff's request.

G.  It was Defendant's obligation to respond to Plaintiff's request to admit under Rule 36.

**WHEREFORE, Plaintiff respectfully moves the Court to enter an order, as permitted and authorized by and provided for by *Rule 36,* deeming the aforementioned facts attached as Exhibit A admitted and the genuineness of the attached documents to Exhibit A for the purposes of the trial of this action, and for such other and further relief to which Plaintiff may be entitled pursuant to the *Federal Rules of Civil Procedure.***

DATED: June 28, 2017

Mary Madison
9758 South Charles
Chicago, IL 60643

## CERTIFICATE OF SERVICE

Please take notice that on June 29, 2017, I, Mary Madison, hereby, certify that I did file a **MOTION TO DEEM FACTS ADMITTED PURSUANT TO REQUEST FOR ADMISSIONS** with the Central District of Illinois Urbana Division in the foregoing matter of Case No. 15-cv-02290-CSB-EIL and have served the persons identified on the docket's service list via Notice of Electronic Filing generated by the Court's CM/ECF system.

Pro Se
MARY MADISON
9758 S. Charles
Chicago, IL 60643
773.297.9569

Kimberly J. Overbaugh
Thomas R. Davies
Harmon & Davies, P.C.
2306 Columbia Ave
Lancaster, PA 17603

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500
Chicago, IL 60601