E-FILED
Friday, 30 June, 2017  01:58:50 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION



FILED

JUN 3 0 2017

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

MARY MADISON,

        Plaintiff,

                                 Case No. 15-ev-2290-CSB-EIL

V.

KENCO LOGISTIC SERVICES, et. al.,

        Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE EXPERT REPORT

In a desperate attempt to avoid the merits of this case, which addresses the actions taken by Defendants to impair and thwart the fundamental rights of Plaintiff, Defendants have filed a Motion to strike the expert report[1] of Plaintiff's expert James Kolka.  Defendants' Motion should be denied for multiple reasons. *First*, Defendants' Motion is untimely. As Defendants filed their Motion *nearly two months after Plaintiff produced the expert report*. Defendants had been on notice since January 6, 2017 that Plaintiff sought to utilize an expert and had been apprised of who the expert was since late February or early March of 2017.  *Second*, contrary to Defendants' claims, Defendant did not engage in any discovery with Plaintiff's expert witness, Mr. Kolka when discovery was open to legitimize and or support its claims of reliability and relevance, as Defendants nor their counsel are experts in ISO or regulated fields that use ISO as a basis of compliance.

---

[1] Expert witness report is hereto attached as Exhibit A-The expert report exhibits have been excluded with the exception of Mr. Kolka's curriculum vitae and can be made available upon request.

Moreover, Defendants tout their lack of knowledge and understanding relative to ISO by equating it to or aligning it with science and or scientific basis.  ISO has published over 21,000 standards and related documents, covering almost every industry, from technology, to food safety, to agriculture and healthcare. ISO International Standards impact everyone, everywhere.  For example, there are standards related to: Currency Codes, Social Responsibility, Risk Management, Sustainable Events, Energy Codes, Medical Devices, Occupational Health and Safety, Auditing, Date and Time, Environmental, and many others in addition, to Quality Management and Food Safety Management.

More specifically, the Quality Management System "ISO 9000 family addresses various aspects of quality management and contains some of ISO's best known standards. The standards provide guidance and tools for companies and organizations who want to ensure that their products and services consistently meet customer's requirements, and that quality is consistently improved."[2]

**ISO 9001** hereto attached as **Exhibit B**

ISO 9001 is a standard that sets out the requirements for a quality management system. It helps businesses and organizations to be more efficient and improve customer satisfaction.

A new version of the standard, ISO 9001:2015, has just been launched, replacing the previous version (ISO 9001:2008).

- A quality management system is a way of defining **how an organization can meet the requirements** of its customers and other stakeholders affected by its work.

- ISO 9001 is based on the idea of **continual improvement**.

---

[2] International Organization for Standardization Website-Standards

2

- It doesn't specify what the objectives relating to "quality" or "meeting customer needs" should be, but requires organizations to define these objectives themselves and continually improve their processes in order to reach them.

**ISO 9001 Benefits**

- Work in a **more efficient way** as all your processes will be aligned and understood by everyone in the business or organization. This increases productivity and efficiency, bringing internal costs down.

- Meet the necessary **statutory and regulatory requirements**.

- **Expand into new markets**, as some sectors and clients require ISO 9001 before doing business.

- **Identify and address the risks** associated with your organization

**ISO REVISION**

- All ISO standards are reviewed and revised regularly to make sure they remain relevant to the marketplace.

- ISO 9001 has been updated to take into account the different challenges that businesses now face.

- For example, increased globalization has changed the way we do business and organizations often operate more complex supply chains, and there are increased expectations from customers.

- ISO 9001 needs to reflect these changes in order to remain relevant.[3]

During the relevant time ISO 9001:2008 management system was in place at the Mars Manteno facility and was the governing system used by Defendants Kenco and Walsh as a compliance mechanism to its employer Mars, Inc.; that Mars, Inc. would be in compliance to the prerequisites and requisites of the Federal Performance Standards codified in 21 CFR. This standard requires a documented and written Quality Management System that standardizes every aspect of the business-operation to ensure that what you say you do on paper is exactly what you do in practicum and vice versa, as well as, to account for any deviations.

Specifically, *standardized work* is the description of the work being performed, and it includes the takt time, specific sequence or activities and defined work-in-process inventory. It is the standard to which the actual process is compared, and it represents the foundation on which to improve.[4] Therefore, based upon these facts the system rids itself of bias, impartiality and misapplication due to its self-advocacy of Continual Improvement based upon Lean and Kaizen. Lean[5] is a business-improvement initiative, best applied enterprise wide.[6] The overarching Lean Principle is continuous incremental change. This is supported by two additional categories: Customer Satisfaction and Respect for People.[7] Continual Improvement (***Kaizen-a mindset of continual improvement***) requires one to have standards.–standard specifications, standard processes, standard systems, standard procedures, standard work instructions, and so on. All work should be measured and performed to standards. After you implement any improvement, you must

---

[3] Exhibit B ISO 2015 Power Point
[4] Lean For Dummies by Natalie J. Sayer and Bruce Williams-2007 page 108
[5] Lean is a Methodology of eliminating waste as defined by the ASQ (American Society of Quality)
[6] Lean For Dummies by Natalie J. Sayer and Bruce Williams-2007 page 14
[7] Lean For Dummies by Natalie J. Sayer and Bruce Williams-2007 page 215. A common misconception holds Lean as a sort of manufacturing quality program. The philosophy, principles, and practices of Lean are applicable everywhere, and they are most effective when applied across the entire organization. Page 14-15

standardize to perform consistently to this improved state. [8]    Consequently, the system is relevant and reliable due to its self-imposed mechanisms of standardization and Continual Improvement that are inextricably linked to the Federal Performance Standards outlined in 21 CFR Chapter I Subchapter A Part 1 General Enforcement Regulations Subpart M, FSMA (Food Safety Modernization Act), the Bioterrorism Act of 2001, the Sanitary Transportation Act and other codified International and National standards.

Pointedly, the ISO 9001:2008 is the infrastructural framework of the ISO 22000 Food Safety Management system along with PAS (Publicly Available Specification) 220[9], a set of prerequisite program requirements for food processors and manufacturers, along with other known standards that are the basis.  The requirements of ISO/TS 22002-1 must be met by companies  FSSC 22000 Certified.

**Requirements of ISO/TS 22002-1 (PAS 220)**

Prerequisite programs in ISO/TS 22002-1 include requirements for:

1.  Construction and layout of building
2.  Layout of premises and workspace
3.  Utilities - air, water, energy
4.  Waste disposal
5.  Equipment suitability, cleaning and maintenance
6.  Management of purchased material
7.  Measures for prevention of cross contamination
8.  Cleaning and sanitizing
9.  Pest control
10. Personnel hygiene and employee facilities
11. Rework
12. Product recall procedures
13. Warehousing
14. Product information
15. Food defense, biovigilance and bioterrorism

---

[8] Lean For Dummies by Natalie J. Sayer and Bruce Williams-2007 page 121
[9] The PAS 220 has now been withdrawn and **replaced by ISO/TS 22002-1**, which has requirements identical to those originally published in the PAS 220.

Mars, Inc. is FSSC certified as mandated by the Federal Performance Standards outlined in 21 CFR Chapter I Subchapter A Part 1 General Enforcement Regulations Subpart M.    Last, but not least this Federal Performance Standard is not data driven and does not require any statistical analysis to ensure reliability, to execute its initiation or deployment or sustainability throughout its lifecycle. Therefore, due to the establishment of an agency relationship according to 21 CFR Chapter I Subchapter A Part 1 Subpart H Defendant Kenco and Walsh had to submit to the prevailing Federal Performance Standards; consequently making the Quality Management System, inclusive of its policies, procedures, protocols, forms, logs and the like, as well as, the integrity of the system relevant to all employees of the Mars Manteno facility, including Plaintiff.

Moreover, it could easily be stated that this system established a duty of care, through the Defendants fiduciary obligation to comply with the Federal Performance Standards issued under 21 CFR and other prevailing International and National Standards.

Defendant goes on ad nauseam to reference **Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)** and the litmus test for **Daubert, Kumho Tire Co. v. Carmichael, 526 US 137 - Supreme Court 1999**, data, scientific community, scientific evidence, relevancy, reliability and Rule 702 and how they refute Plaintiff's expert witness' report..

 For clarification, **Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)** states at 582- According to Judge Blackmun "In this case we are called upon to determine the standard for admitting expert scientific testimony in a federal trial."  Specifically, the Daubert case was pertaining to children born with serious birth defects, an epidemiological matter, believed to be brought on by ingestion of a prescription anti-nausea drug, Bendectin marketed by Merrell Dow Pharmaceuticals. It also goes on to say in the latter part of 591- "The consideration has been aptly

described by Judge Becker as one of "fit." *Ibid.* "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." Therefore, to application of these Daubert standards would be a misfit, as Plaintiff is not seeking to admit expert scientific testimony, but testimony relative to "technical and/or specialized knowledge" of the standards used in the compliance of the codified Federal Performance Standards of 21 CFR, The Bioterrorism Act of 2001, FSMA (Food Safety and Modernization Act), the Sanitary Transportation Act, as well as, other prevailing International and National statues, standards and regulations.

> It also goes on to say at Daubert 592
>
> Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and 703. Presumably, this relaxation of the usual requirement of firsthand knowledge—a rule which represents "a `most pervasive manifestation' of the common law insistence upon `the most reliable sources of information,' " Advisory Committee's Notes on Fed. Rule Evid. 602, 28 U. S. C. App., p. 755 (citation omitted)—is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

This statement also affirms the opinions made by Mr. Kolka, as being legitimate and well within the scope of the rule and law.

Furthermore, rules 703 and 705 of the Federal Rules of Evidence govern the basis for an expert's opinion; rule 703 explicitly allows an expert to form her opinion on the basis of facts or data that the expert "has been made aware of". **Trimmer v. COMMISSIONER OF INTERNAL REVENUE, 148 TC 14 - Tax Court 2017. Rule 705 states that** [U]nless the court orders otherwise, an expert may state an opinion — and give the reasons for it — without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination. More explicitly, Rules 703 and 705 ratify Mr. Kolka's ability to assert the opinions cited in his report and more specifically those highlighted by Defendant because of the facts that

Mr. Kolka was made aware of relative to the case and that the court had not otherwise ordered Mr. Kolka not to make an opinion. Pointedly, Mr. Kolka was given Defendant's evidence tendered to Plaintiff in discovery for his review, (hereto attached as **Exhibit C** is a copy of the email detailing by Bates numbering the 1733 pages of information provided by Defendant). Mr. Kolka was also given the Defendants discovery responses hereto attached as **Exhibit D,** as well as, Mars, Inc. quality manual amongst other policies, procedures, protocols and forms.

It also goes on to say that "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry," Daubert at 593. Based upon this statement and the fact that the analyses is rooted and grounded in technicalities of ISO and peer proof texted every three (3) years by a technical committee comprised of technocrats for accuracy and relevancy to the International and National statutory and regulatory performance requirements, it goes without saying that this is a clear demarcation from the court's definition of "Scientific Methodology;" therefore, this analyses cannot be treated as such.

It also goes on to say "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," Daubert at 596 See <u>Rock</u> v. <u>Arkansas, 483 U. S. 44, 61 (1987)</u>.

It further says at the latter part of Daubert 599-600

> The Court constructs its argument by parsing the language "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, . . . an expert . . . may testify thereto . . . ." Fed. Rule Evid. 702. It stresses that the subject of the expert's testimony must be "scientific . . . knowledge," and points out that "scientific" "implies a grounding in the methods and procedures of science" and that the word "knowledge" "connotes more than subjective belief or unsupported speculation." *Ante,* at 590. From this it concludes that "scientific knowledge" must be "derived by the scientific method." *Ibid.* Proposed testimony, we are told, must be supported by "appropriate validation." *Ibid.* Indeed, in footnote 9, the Court decides that "[i]n a case involving

scientific evidence, *evidentiary* 600*600 *reliability* will be based upon *scientific validity. "*
*Ante,* at 591, n. 9 (emphasis in original).

Again in Justice Stevens concurring opinion it is recognized that this case was a scientific driven case and should be approached in a scientific manner using scientific evidence and validity.

The expert opinion of the expert witness proffered by Plaintiff is not rooted and grounded in the applied sciences; but in an area of technical expertise and specialized knowledge that dovetails to science principles that are not quantifiable under these circumstances.

Ironically, Defendants cite excerpts of Rule 702 and woefully fail to represent the Rule in its entirety.

**Rule 702 clearly states in its unabridged version:**

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Plaintiff believes that her expert witness is spot on Rule 702, as Mr. Kolka is disciplined in science, law and ISO. Mr. Kola holds an undergraduate degree in Chemistry, a Law Degree with a background in product liability and environmental law, a PhD in Political Science and International Affairs, and has 27 years of experience with ISO. Over those 27 year Mr. Kolka has perfected, fine-tuned and honed his skill set to that of a Subject Matter Expert and leader in the field of ISO. He has proof texted his knowledge by being a champion in the creation of the Center for International Standards & Quality (CISQ) at Georgia Tech. The Center included Quality

Management Standards (ISO 9000) as well as International Standards such as European Norms (EN) and Japanese Industrial Standards (JIS).

Mr. Kolka has taught and continues to teach courses on ISO 9000 for different universities and consulting firms, most recently a lead auditor course for Excel Partnership Inc. (an SAI Global Company of Sydney Australia). Mr. Kolka has taught ISO 9001 workshops at Georgia Tech, Clemson University, the University of Wisconsin-Madison and a Master's Degree Program in Quality Management at Loyola University in New Orleans as well as numerous public venue training sessions.

Mr. Kolka conducts GAP Analyses for companies to identify where they stand in regard to the current version of ISO 9001 (ISO 9001:2000, ISO 90001:2008 and now ISO 9001:2015) as well as train and help them conduct internal audits and supplier audits.

In addition, for the past twenty-seven (27) years Mr. Kolka has worked with companies preparing to satisfy the European Union's CE marking requirements for the Machinery Safety, Medical Devices, Pressure Equipment and related 28 EU Directives as well as ISO 9001 & ISO 13485 when quality management standards also are required. He has also worked with medical device companies required to comply with FDA's Quality Management Regulation (QSR), which are also ISO standards, in order to manufacture and sell medical devices in the US. Mr. Kolka also has developed a comprehensive loss prevention program that incorporates elements of both ISO 9001 Quality Management Systems and ISO 14000 Environmental Management Systems, as well as, sector specific quality management systems for automobiles (QS 9000 & ISO/TS 16949), aircraft (AS 9000), maritime (IS 9002/ISM Code), telecommunications (TS 9000) and finance (FS 9000) to reduce company liability exposure in the US and EU markets.

Mr. Kolka also works as an international legal consultant, specializing in several areas, including conducting litigation evaluations in the US and EU (including product risk analyses/risk evaluations) for manufacturers. Mr. Kolka also conducts forensic legal evaluations of company Quality Management Systems such as ISO 9001. He has conducted more than 450 seminars and workshops for North American, European, Asian and Latin American companies and universities and has written more than 300 articles and five (5) books on topics including ISO 9001, including "ISO 9001…A Legal Perspective" co-published by INFORM and ASQ Press in 1998 amongst other notable mentions.

Therefore, it would be unreasonable to assert that Mr. Kolka's opinions are unreliable, as Mr. Kolka has the unique advantage of being multi-disciplined in the core areas of competencies that comprise the issues at hand, as well as, an expert on the tools/vehicles that were used to retaliate and discriminate against Plaintiff.

Moreover, Defendants' lack of production of documents requested and Defendant's responses contributed to the opinions derived by Mr. Kolka, as the requested documents and statements are requisites needed for compliance to the codified Federal Performance Standards. These documents would include but are not limited to logs, reports, minutes, appendices and other matrixes that comprise the codified Federal Performance Standards using the ISO Standards.

In **Kumho Tire Co. v. Carmichael, 526 US 137 - Supreme Court 1999** is a case of product liability case relative to tires that uses a failure analysis as a means of reliability to support its claims. Reliability in this instance is an Engineering discipline; whereby statistical methods are important tools used in Reliability Engineering[10]. A failure analysis essentially analyzes why the product failed; this determination can be done by several different modes of analysis. Specifically,

---

[10] ASQ Statistics Division Newsletter, Vol 21. No. 2

11

Failure Mode and Effect Analysis (FMEA) is a proactive tool developed to identify, evaluate and prevent product and/or process failures[11] hereto attached as Exhibit E.

Consequently, this case is distinguishable on its facts in that it does not mirror or even symbolizes Plaintiff's expert analysis provided. However, interestingly enough **Kumho** goes on to say at *150*

Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. See, *e. g.,* Brief for Stephen N. Bobo et al. as *Amici Curiae* 23 (stressing the scientific bases of engineering testimony). In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. As the Solicitor General points out, there are many different kinds of experts, and many different kinds of expertise. See Brief for United States as *Amicus Curiae* 18-19, and n. 5 (citing cases involving experts in drug terms, handwriting analysis, criminal *modus operandi,* land valuation, agricultural practices, railroad procedures, attorney's fee valuation, and others). Our emphasis on the word "may" thus reflects *Daubert*`s description of the Rule 702 inquiry as "a flexible one." 509 U. S., at 594. *Daubert* makes clear that the factors it mentions do *not* constitute a "definitive checklist or test." *Id.,* at 593. And *Daubert* adds that the gatekeeping inquiry must be "`tied to the facts' " of a particular "case." *Id.,* at 591 (quoting United States v. Downing, 753 F. 2d 1224, 1242 (CA3 1985)). We agree with the Solicitor General that "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Brief for United States as *Amicus Curiae* 19. The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert,* nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

*Daubert* itself is not to the contrary. It made clear that its list of factors was meant to be helpful, not definitive. Indeed, those factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged. It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist. Nor, on the other hand, does the presence of *Daubert*`s general acceptance factor help show that an expert's testimony is reliable where the discipline itself lacks reliability, as, for example, do theories grounded in any so-called generally accepted principles of astrology or necromancy.

---

[11] Failure Analysis of FMEA-Zigmund Bluvband, ALD Ltd. and Pavel Grabov, ALD Ltd.

**Carmichael v. Samyang Tire, Inc., 131 F. 3d 1433 - Court of Appeals, 11th Circuit 1997 states the following[12]:**

> Although the Court's analysis in *Daubert* may suggest reliability issues for district courts to consider as they determine whether proffered evidence is sufficiently reliable for admission under Rule 702, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: `Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" <u>United States v. 14.38 Acres of Land,</u> 80 F.3d <u>1074, 1078 (5th Cir.1996)</u> (quoting *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798).

> What, then, is the difference between scientific and non-scientific expert testimony? In short, a scientific expert is an expert who relies on the application of scientific principles, rather than on skill- or experience-based observation, for the basis of his opinion. *See* <u>*Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795</u>. As the Sixth Circuit explained in *Berry v. City of Detroit:*
> It "review[ed] . . . *de novo* " the "district court's legal decision to apply *Daubert.* " *Id.,* at 1435. It noted that "the Supreme Court in *Daubert* explicitly limited its holding to cover only the `scientific context,' " adding that "a *Daubert* analysis" applies only where an expert relies "on the application of scientific principles," rather than "on skill- or experience-based observation." *Id.,* at 1435-1436. It concluded that Carlson's testimony, which it viewed as relying on experience, "falls outside the scope of *Daubert,* " that "the district court erred as a matter of law by applying *Daubert* in this case," and that the case must be remanded for further (non-*Daubert* -type) consideration under Rule 702. <u>131 F. 3d, at 1436</u>.

As fate would have it and another irony, this case emphasizes Daubert's litmus test was to be helpful not exhaustive, that there is diversification in kinds of experts and expertise, that this litmus test is not applicable in every instance and that the court had erred in its application of Daubert.

To further support the sentiment that the Court recently again recognizes diversification and liberality in the matter **SELECT COMFORT CORPORATION v. Baxter, Dist. Court, Minnesota 156 F. Supp. 3d 971 (D. Minn. 2016).**

> The Court also notes that "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion. <u>*Lauzon,* 270 F.3d</u> <u>at 686</u>. When examining an expert opinion, a court applies a general rule that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." <u>*Bonner v. ISP Techs., Inc.,* 259 F.3d 924, 929 (8th Cir. 2001)</u> (citation and quotation omitted).

---

[12] The case is to related Kumho Tire vs. Carmichael, 526 US 137 - Supreme Court 1999-

Another Court also has some similar thoughts in **PHOENIX TECHNOLOGIES LTD. v. VMWARE, INC., No. 15-cv-01414-HSG (N.D. Cal. June 7, 2017).**

## § I Part A ¶2-3

Federal Rule of Evidence 702 governs the admission of testimony by expert witnesses. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.   For expert testimony to be admissible, the expert must be qualified, *Hangarter v. Provident Life & Acc. Ins. Co.,* 373 F.3d 998, 1015 (9th Cir. 2004), and the expert's testimony must be "both relevant and reliable," *Estate of Barabin v. AstenJohnson, Inc.,* 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal marks omitted); *see also Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993). Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter,* 373 F.3d at 1018 (emphasis in original). Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise. *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. "Relevancy simply requires that the evidence logically advance a material aspect of the party's case." *AstenJohnson,* 740 F.3d at 463 (internal quotation marks omitted). Finally, reliability requires that an expert's testimony have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999) (internal quotation marks and brackets omitted).

**Another Court expressed similar sentiments as Recent as May 18, 2017 in State Farm Fire & Casualty Company v. HARTMAN CONTRACTORS, Civil Action No. 14-6535 (E.D. Pa. May 18, 2017).**

## § III Part A ¶2

Rule 702 has "a liberal policy of admissibility." *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997)). As such, the "rejection of expert testimony is the exception and not the rule." Fed. R. Evid. 702, advisory committee's note. "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741 (3d Cir. 1994));

¶3

With respect to qualifications, "Rule 702 requires the witness to have `specialized knowledge' regarding the area of testimony." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.,* 300 F.3d 325, 335 (3d Cir. 2002) (quoting *Waldorf v. Shuta,* 142 F.3d 601, 625 (3d Cir. 1998)). The qualifications requirement should be interpreted "liberally," *see Waldorf,* 142 F.3d at 625, and "various kinds of `knowledge, skill, experience, training or education,' [may] qualify an expert as such," *In re Paoli,* 35 F.3d at 855 (quoting Fed. R. Evid. 702).

¶4

With respect to reliability, "the expert's opinion must be based on the `methods and procedures of science' rather than on `subjective belief or unsupported speculation'; [and] the expert must have `good grounds' for his or her belief."

¶5

The reliability requirement does not require parties "to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli,* 35 F.3d at 744. "The evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* "As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Mitchell,* 365 F.3d at 244 (citations and quotations omitted).

## Conclusion

Based upon the unabridged version of Rule 702 and Rule 703, Plaintiff believes that her expert witness satisfies the perquisites and requisites of the Court to offer expert testimony. Mr. Kolka is an expert in his field with more than 27 years' worth of ISO experience interfaced with his disciplines of law, political science, product liability and international standards. Mr. Kolka has stellar educational and professional credentials see attached curriculum vitae hereto attached as **Exhibit F.**

Plaintiff believes that under Rule 703 Plaintiff's expert witness is entitled to offer opinions based upon the information and facts that the expert is aware of.  Defendant as a requisite to Rule

26 has been tendered the information that Mr. Kolka reviewed.  Defendant has not raised an

objection to the materials reviewed by Plaintiff's expert witness that included the: 1733 pages

provided to Plaintiff by Defendant as Defendant's Bates Numbered evidence.  The Expert Report

was twenty (20) pages, including the two (2) Exhibit List pages, Mr. Kolka's Curriculum Vitae and

Selected Papers and Publications totaled seventeen (17) pages, Mars, Inc. Quality Manual and

Supplier code of conduct comprised 192 pages, seventeen (17) pages were spacers/dividers and the

remaining three hundred and thirteen (313) pages were comprised of Federal Performance

Standards, Articles, Defendant's policies and other miscellaneous correspondence that was

reviewed.


        Plaintiff believes that the report was and is well organized, robust, relevant and reliable.

Plaintiff also believes that it will be able to assist and empower a trier of fact with knowledge

relative to how the ISO system brings standardization, accuracy, reliability, transparency,

traceability and accountability to any organization through verified internal and external 2nd and 3rd

party auditable findings relative to the compliance with the Codified Federal Performance

Standards.  Essentially ISO 9001 is a factual evidence based system that ensures accuracy and

reliability.[13]

        An example of the relevancy of Mr. Kolka's expertise and how it can enlighten a trier of

facts is as follows: Excerpted ¶ 2-4 from page 16 of Exhibit A-Kolka's report.

        Specifically, with respect to the PIP (Performance Improvement Plan) that was issued to
        Complainant, the PIP failed to meet the guidelines of the Defendants own QMS
        Documentation Policy CP.BP. 4.2.1001 and Control of Documents ISO.BP. 4.23.001, hereto
        attached as **Exhibit H** and according to ISO standards, as well as, it was not listed in
        Defendant's appendices, including Appendix F, hereto attached as **Exhibit I**.  Moreover, there
        should have been an accompanying policy to support this PIP; there is no evidence of such
        policy during the relevant time period.

---

[13] See Exhibit G §6 QMP

Deviations (non-conformities) from any company policy, procedure, or protocol, including this one, are to be documented and logged, as well as, subject to an exception review if warranted as cited in Defendant's QMS Documentation Policy CP.BP. 4.2.1001. Furthermore, Defendant had a Performance Management Policy CP.HR. 6.2.2.009 that would have been applicable to complainant. Therefore, in my opinion the PIP as issued was not a legitimate company document and did not conform to the mandated International Organization of Standards 9001:2008 standards of Kenco nor Mars, Inc. Specifically, in my opinion the issuance of this PIP was a contrived and intentional deviation from Defendant's normal practices and can be construed as a retaliatory pretext to complainant's adverse employment actions and decisions. Moreover, in a standardized environment one cannot legitimately support a known non-conformity, as it is contrary to the organizational schemes and methods.

Essentially, Defendant Kenco in tandem along with Defendant Mars had policies, procedures, and protocols relative to documentation, control of documents, index of documents, as well as, the other ISO 9001:2008 and ISO 22000 Standard of requisites and prerequisites for the lawful operation of the Mars Manteno Facility. Therefore, the adherence of the policies, procedures and protocols as presented during a documented relative time is inextricably linked to the compliance of the Federal Mandates of 21 CFR, FSMA, the 2002 Bioterrorism Act, the Codex Alimentarius and other Federal and International prevailing laws.


It will also show how Defendants violated their own policies, contrived schemes and conspired to violate Plaintiff's protected rights, manipulated and falsified documents and statements, debunking the many different alleged non-discriminatory and non-pretextual reasons offered for Plaintiff's termination to various tribunals, breach of Defendants' fiduciary obligation and duty of care to Plaintiff and others, obstructed and impeded justice, tampered with evidence; in addition to, making false and misleading statements to various tribunals under oath and committing fraud upon the court.

Essentially Mr. Kolka and his expertise will show that: you have on paper exactly what you say you do; that you do exactly what you say you do; or you have to justify why you did not do exactly what you said you did in writing to be compliant.

Plaintiff's expert witness does not seek to offer scientific testimony, but technical and specialized testimony with regards to the Codified Federal Performance Standards. Plaintiff does

not deny that the Court is the "gatekeeper." Plaintiff acknowledges that in all matters of dispute, The Court is the "gatekeeper." Therefore, Plaintiff expectations swelter with the hope that the Court recognizes the marvel opportunity to highlight how standardization deters and perhaps even halts inequalities and disparities in our society.

In addition, Plaintiff does not think it proper that Defendants should use this Court to vett Plaintiff's expert witness, due to the Defendants failure to exercise its due diligence of utilizing the adversary system of a vigorous cross-examination, presentation of contrary evidence, and other appropriate means of attacking Plaintiff's evidence during the time discovery was available to Defendant.

Plaintiff also believes that Defendant's objection is untimely, as Defendant did not raise an objection until sixty (60) days after receipt of the report.

**Wherefore, in conclusion** based upon the aforementioned reasons Plaintiff respectfully request that Court deny Defendants' Motion to Strike Expert Report.

Respectfully submitted, **MARY MADISON**

By: _____

Pro Se
MARY MADISON
9758 S. Charles
Chicago, IL 60643
773.297.9569

CERTIFICATE OF SERVICE

Please take notice that on June 29, 2017, I, Mary Madison, hereby, certify that I did file a

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE EXPERT REPORT** with the

Central District of Illinois Urbana Division in the foregoing matter of Case No. 15-cv-02290-CSB-

EIL and have served the persons identified on the docket's service list via Notice of Electronic Filing

generated by the Court's CM/ECF system.

_____

Pro Se
MARY MADISON
9758 S. Charles
Chicago, IL 60643
773.297.9569

Kimberly J. Overbaugh
Thomas R. Davies
Harmon & Davies, P.C.
2306 Columbia Ave
Lancaster, PA 17603

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500
Chicago, IL 60601