UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

MARY MADISON,

    Plaintiff,

v.

KENCO LOGISTIC SERVICES, LLC,
et al.,

    Defendants.

Case No. 15-2290

## REPORT AND RECOMMENDATION

This matter is before the Court following Defendant's request for a hearing regarding the accuracy of Plaintiff's In Forma Pauperis Application. Following the hearing, and for the reasons explained below, the Court recommends that this case be dismissed for Plaintiff's failure to be truthful on her in forma pauperis ("IFP") application.

    **I. Background**

        **a. Defendants' Motion for Hearing**

Plaintiff filed her Complaint in this case on December 8, 2015. On the same date, Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis (#2). Plaintiff's in forma pauperis application indicated that she was unemployed and did not have any wages, but that she received money "from family and friends" in "random amounts" as well as "a royalty check." *See* d/e #2. Plaintiff's application did not list the amount of the royalty checks or the frequency upon which they were received, and did not specify the amount of money she was receiving from family and friends. Plaintiff further claimed to have less than $100 in cash, checking, or savings. Plaintiff stated that she owned a home, but failed to state the value of the home or the amount of the mortgage. The only debts or financial obligations Plaintiff listed were "house loan" and "credit cards," but

she did not disclose their amount. On January 4, 2016, Plaintiff was granted leave to proceed in forma pauperis (#5).

On July 11, 2017, Defendants filed a Motion to Schedule a Hearing Regarding the Accuracy of Madison's In Forma Pauperis Application (#65). Defendants alleged that, during Plaintiff's June 16, 2017 deposition, Plaintiff testified she had not worked since August 2013 and was not receiving government assistance, but that she has had sufficient money available to her such that she has not needed to work since her termination from Kenco in 2013. During her deposition, Plaintiff refused to state how much money she had in her bank account and testified that she "had money before" working for Kenco. Plaintiff also testified that she has taken multiple trips over the last several years and that she has money stored under her mattress, but refused to disclose the amount. Based on Plaintiff's deposition responses regarding her financial status, Defendants requested an in person hearing on the issue of Plaintiff's financial condition.

On July 25, 2017, Plaintiff filed a Response to Defendants' Motion on the Accuracy on Madison's In Forma Pauperis Application (#67). Plaintiff attached as an Exhibit to her Response a copy of her bank statement from November 19, 2015 to December 19, 2015. Plaintiff argued that the bank statement showed that the balance in her checking account on December 7, 2015 (the date her IFP petition was filed) was $13.99. The Exhibit, however, also showed that on December 9, 2015 (2 days after her IFP petition was filed) and December 11, 2015 (4 days after her IFP petition was filed), Plaintiff deposited $477.53 and $800 into her account. The bank account statement also did not contain Plaintiff's name, but rather showed the name of Iona J. Madison.

The remainder of Plaintiff's Response did not address the merits of Defendants' Motion, but rather argued that the Motion was filed to obstruct justice, complained that Defendants did not properly notice her deposition, and continued to argue that Defendants have not produced documents in discovery.

On July 26, 2017, the Court granted Defendants' Motion for a Hearing and set a hearing on the accuracy of Plaintiff's IFP status for August 7, 2017. The hearing lasted over two hours, during which the Court extensively questioned Plaintiff, under oath,

2

regarding her financial status. On September 1, 2017, Defendants filed a Motion to Supplement the Record Related to Docket 65, the Accuracy of Testimony and Submissions of Plaintiff (#70). Defendants' Motion sought to introduce more information that Defendants claim contradict statements made by Plaintiff in her Deposition and before the Court during the August 7, 2017 hearing. The Court granted Defendants' Motion on September 18, 2017 and considered the supplemental information in making an overall credibility determination regarding Plaintiff's testimony.

### b. Plaintiff's Testimony Regarding Her Financial Status

Throughout the entirety of her testimony regarding her financial status, Plaintiff's answers were vague, elusive, and completely lacked credibility. Plaintiff took multiple extended pauses to formulate answers to what should have been simple questions. Plaintiff appeared extremely nervous and was reluctant to provide the Court with direct answers regarding any aspect of her financial condition unless the answer directly supported her alleged in forma pauperis status. Almost every answer Plaintiff provided needed to be coaxed out of her by the Court after multiple delays as well as the Court rephrasing the question several times.

Plaintiff testified that she lives in a house in Chicago, but that she did not know "at this time" how much the house is worth. According to Plaintiff there is a mortgage against her home, but she does not know the current balance. Plaintiff stated she has lived in the home her entire life and that the house was gifted to her "before 2010." Plaintiff admitted that the house was appraised when it was given to her, but did not know the appraisal value. After extensive questioning, Plaintiff guessed that it was $310,000. According to Plaintiff, the mortgage is in her name and the monthly mortgage payment is about $1,800 per month.

Plaintiff reported that she was behind on her mortgage to the point of foreclosure around 2013. In late "2015 or early 2016" a payment plan was worked out, and she has paid her mortgage ever since. Plaintiff failed to give a clear explanation of the source of her mortgage payments. Plaintiff stated that she previously had other real estate

interests in the early 2010's but she "lost them in a tax sale." Plaintiff testified that any assets that she had "were dissipated prior to filing this application [to proceed IFP]." Plaintiff also reported "having an interest in a piece of property" from her late uncle, which consists of a vacant house in Louisiana. Plaintiff did not know how much the property is worth and was unable to provide specific details about the property outside of it "being a house and a little land."

Plaintiff testified that she did have monthly expenses on her home. When asked specifically about her water bill, Plaintiff claimed she has not paid her water bill in at least 2 years, but that the water has not been turned off because she "talked to the city and explained my situation." Plaintiff reported being current with her $100 a month electric bill. Plaintiff indicated she also had internet and cable television, with the bill ranging from $100 to $150 dollars per month. Plaintiff stated she was current on her cable and internet bill.

Plaintiff admitted to the Court that she was responsible for paying all her bills, but that other people "frequently" pay her bills for her. Plaintiff was asked numerous times how often others paid her bills for her, but appeared very reluctant to provide a direct answer. When asked if others paid her bills monthly, Plaintiff stated "probably." Plaintiff named at least 3 individuals who have made direct payments on her behalf, including her pastor and multiple friends. When asked how long others had been paying her bills, Plaintiff's response was vague, stating "a good period of time," before being pressed by the Court to be more specific. Plaintiff took a very long pause before finally telling the Court other people have been paying her bills since 2013. Given Plaintiff's demeanor, the extended delays in answering the questions, and the very nature of the answers themselves, the Court finds this testimony unbelievable.

The Court also questioned Plaintiff extensively on the checking account statement she submitted in response to Defendants' Motion for a Hearing. Plaintiff claimed the checking account was hers, but that another individual, Yolanda Smith, also had access to the account. Plaintiff told the Court that in 2015 (the date on the checking account statement) her mother, Iona, was on the account, but that her mother had

passed away 10 years earlier in 2005. When asked why the checking account was in her mother's name, Plaintiff first responded "I don't know." When asked if she reported to the bank that her mom had passed away, Plaintiff stated "um, I'm sure I did."

Plaintiff became noticeably uncomfortable and vague when questioned about the $477.53 and $800 deposits that were made to her account days after her IFP petition was filed. Plaintiff admitted to making the deposits, but denied knowing the origin of the December 9, 2015 deposit for $477.53. Plaintiff was asked to provide her best recollection for what the deposit was, to which she stated "maybe, like, something from the church." When the Court pressed further and asked "for what?," Plaintiff took a very long pause before responding "I'm not sure." Plaintiff admitted that she was not receiving any type of paycheck, unemployment, or government aid at the time. Plaintiff stated that she did not know why the church would be giving her $477.53, but that "perhaps" it was to pay a bill. Plaintiff likewise stated that she was "not really sure" when asked about the $800 deposit.

The Court also noted that the bank statement showed that Plaintiff had not paid any bills during the November to December time period represented on the statement. Plaintiff admitted that she does not have another bank account and that she was "not really sure" if she paid bills during that time period. When asked further, Plaintiff reported frequently paying her bills at the currency exchange with cash.

The Court next questioned Plaintiff about her income. Plaintiff testified that she is not employed. Plaintiff again took an exceptionally long pause before telling the Court that she was a substitute teacher "for a few weeks earlier this year," but that she otherwise has been unemployed since being terminated by Kenco. Plaintiff was also questioned about the money she reported being given by friends and family. Plaintiff provided a vague response and did not give the Court an amount.

According to Plaintiff, she also owns "rights to oil wells" that she inherited from her uncle. Plaintiff testified to knowing very little about her oil well interests, stating "all I know is that I get some royalty checks every now and again." When asked about the royalty checks, Plaintiff reported getting two, but does not know from whom.

5

Plaintiff also reported receiving another royalty check because she "happened to be walking down the street and got caught in a commercial" so she gets "random" royalty checks from that as well. According to Plaintiff, the largest royalty check she has ever received is "maybe . . . $8,000 or $9,000 dollars." When asked how often she gets the checks, Plaintiff changed the subject by stating "I dunno, but I forgot one other thing. I owe the IRS too." Plaintiff eventually stated the royalty checks come "every couple of months." Plaintiff testified that the IRS has been seizing her checks, but that she does not know when that started.

After extensive questioning about inheritances and repeated vague responses from Plaintiff, Plaintiff eventually admitted to receiving annuities following her mother's death. Plaintiff was then asked how long the annuity payments continued. After another extensive pause (which lasted so long that the Court had to repeat its question), Plaintiff testified to receiving "one lump sum" of perhaps "like 5,000" and another payment that was "maybe like 100 something." When asked for clarification, Plaintiff stated she meant $100,000. She testified to receiving these payments in 2004 and 2005 which she invested into a restaurant business. Plaintiff reported that the business closed in 2012 before she worked for Kenco.

Plaintiff also testified that her uncle left her "some cash," to which she stated "I don't know" when asked how much. After pausing and considering the question for a long period of time, Plaintiff reported receiving $30,000 from her uncle's estate around 2010. According to Plaintiff, this money also went into her business. Plaintiff reported that her father passed away "20 some years ago" and that she still receives "small" checks from his life insurance. Plaintiff testified that at one point she had both stocks and bonds. Plaintiff was asked when she last had a bond and after a long delay guessed that it was the "early 2000s." Plaintiff also reported having mutual funds at some point in her life, but did not provide the details. Plaintiff guessed that she cashed out her retirement account in "maybe 2012 or 2013."

The Court also questioned Plaintiff extensively about the answers given in her deposition. Plaintiff testified in her deposition that she had "money before [she] went

[to Kenco]" and had been "living off her savings" since leaving Kenco[1]. When questioned further about this, Plaintiff attempted to distance herself from her deposition response by stating that "my interpretation of what they were asking was what had I been living off of since I left Kenco in 2013 and at one point I was living off of whatever money I had. So in part, that statement is true." Plaintiff became flustered when the Court explained to Plaintiff that the deposition questions were all asked in the "present tense," or rather that the deposition questions had asked her how she had been surviving on that very day. Plaintiff attempted to convince the Court that at the time of her deposition she had "dissipated" her savings in "probably the middle of 15." In direct contradiction to her deposition answers, Plaintiff represented to the Court that she has only been surviving off money from her family and royalty checks.

The Court pointed out to Plaintiff that when her deposition was taken in 2017, she reported living off her savings, but that on her IFP petition in 2015 she reported she did not have any savings. The Court asked Plaintiff to explain how these statements did not contradict each other. Plaintiff was visibly shaken and had a noticeably difficult time answering this question. Plaintiff gave a confusing and difficult to follow response that simply stated that her IFP petition was "true and accurate."

Plaintiff was also asked during her deposition whether she had a checking account, to which she responded "yes." When questioned by the Court, Plaintiff reported that she only had one checking account, and has only had one checking account since "maybe about [long pause] since I went to Kenco." Plaintiff also responded in the affirmative when asked during her deposition about whether she had a savings account. When asked to clarify, Plaintiff reported that this account was held "at Sherwin Williams" and had been opened "in the 90s." Plaintiff testified the account has "like 5 dollars in it" but that she doesn't remember the balance in 2015.

During her deposition Plaintiff also testified she had money "under my mattress at home." Plaintiff told the Court that "today" there is no money under her mattress,

---

[1] As noted, Plaintiff's IFP application was filed on December 8, 2015. Plaintiff's deposition was taken on June 16, 2017. Plaintiff was terminated from Kenco in 2013.

7

but that during her deposition she "may have had about $75 or $100." Plaintiff reported being unsure of when she put the money under her mattress but it "may have been about a week before [the deposition]."

### c. Plaintiff's Testimony Regarding the Involvement of Attorney Jordan Hoffman in this Case

The Court then asked Plaintiff about attorney Jordan Hoffman.[2] Plaintiff stated that Hoffman is "the attorney that is representing me in front of the Department of Labor." When questioned about Hoffman's involvement in this case (where Plaintiff has enjoyed extensive leniency often afforded to pro se plaintiffs), Plaintiff became noticeably nervous and her answers became extremely vague and elusive. Plaintiff reported that she has not paid Hoffman any money and that he has "assisted me with questions and initially helped prepare the Complaint that was filed." When questioned further, Plaintiff stated that Hoffman has "filed information and helped get papers together."

Plaintiff was asked specifically about Hoffman's involvement in all the documents filed before the Court in this case. Plaintiff simply responded that she has "had assistance with some things." Plaintiff was asked to identify the motions or pleadings with which Hoffman assisted. Plaintiff noticeably tried to avoid the question, stating that she has "pretty much got some guidance to make sure they [the pleadings] met the requirements." Plaintiff denied that Hoffman was representing her on this matter.

Plaintiff became even more hesitant to engage the Court when asked if Hoffman was preparing the filings in this case or whether she has been. Plaintiff stated "I don't know. I guess I am trying to understand what filings mean. Do you mean the papers that are being turned in?" When the Court responded in the affirmative, Plaintiff said "it's been both."

---

[2] Defendants have alleged that an attorney by the name of Jordan Hoffman has been ghost writing and preparing pleadings in Plaintiff's case, as well as several other related cases involving the same Defendants. Defendants obtained admissions during the deposition of another Plaintiff in a related case that Hoffman was providing extensive assistance to numerous related Plaintiffs, including but not limited to, drafting entire pleadings and providing detailed responses to discovery requests.

Plaintiff admitted Hoffman prepared her Complaint. The Court asked Plaintiff specifically whether she prepared the response she filed to Defendants' Motion to Dismiss (#28) or whether it was prepared by Hoffman. Plaintiff stated Hoffman "assisted me with that information." When asked again whether she prepared the 22 page response or whether Hoffman did, Plaintiff stated "I guess so, I don't really know. I can say I tried to put down my thoughts." The Court then asked the following question: "So you gave him your thoughts. Did he then give you the 22 pages to file?" Plaintiff was again noticeably hesitant to answer and took an extended period of time before responding "I'm not quite sure." The Court then simplified the question, asking Plaintiff "did you sit at home at your computer and type a 22 page response to a motion to dismiss?" Plaintiff stated "Um, I wrote…something….I can't….I mean….I can't recall."

Plaintiff was asked about the August 23, 2016 Motion for Entry of Default Judgment (#33) that she filed. Plaintiff indicated that her understanding of a default judgment was like "defaulting on a loan." The Court asked Plaintiff whether she prepared the motion, to which stated "I remember doing something . . . I don't really know." When asked specifically about her role in that motion, Plaintiff said "I think I remember [long pause] . . . I mean I had something to do with in part everything."

The Court explained to Plaintiff it was simply trying to get an understanding of what work Hoffman has done in this case. The Court repeated the question: "Did you prepare the Motion for Entry of Default or did he?" Plaintiff took almost a 20 second pause and did not provide an answer to the question. Plaintiff became visibly upset, stating she "got help every step of the way" and that she "tried to pull together from her understanding of everything that occurred and tried to formulate in some type of way and I would get assistance from him as to how to format."

The Court then printed the Motion for Entry of Default (#33) and handed it to Plaintiff. The Court asked Plaintiff if she physically typed the document in its entirety. Plaintiff paused for over a minute to contemplate this question before saying "I can't say that I don't remember this and I can't say that I did not do some work on it, but . . .

9

um . . . I'm not 100% sure." The Court again stated "my question is, did you prepare the motion or did Mr. Hoffman? It is a pretty easy question." Plaintiff again refused to provide a direct answer, stating "I'm sorry, I don't know, I'm not 100% sure if . . . you know if he . . . I'm sure that I got assistance if I did this." The Court pressed further stating "as you sit here now, who do you think did that?" Plaintiff continued to refuse to answer, taking another extended pause before stating "I think in combination we derived it . . . if I'm certain."

The Court asked if Plaintiff recalled filing a Reply (#38) to Defendants' Response to Plaintiff's Motion for Default. Plaintiff, eluding the question, stated "honestly I have just tried to keep up with whatever needed to be done. This is just a lot and I tried to as best as I can keep up with whatever the situation was at the specific time."

The Court also printed Plaintiff's Motion to Strike Answer to Complaint (#39). The Court asked Plaintiff if the document was prepared by her or Hoffman. Plaintiff appeared to read through the entire document before failing to answer the question. The Court then pointed out the caption of the case on the document and asked Plaintiff if she had ever, in her life, created anything that looked like the caption. Again, Plaintiff struggled mightily with this simple question, stumbling over her words, muttering "um" several times, taking multiple extended pauses, and requiring the Court to ask the same simple question several times before eventually saying "I want to say that I would have taken this caption probably off of some other papers that I got."

The Court inquired into who created the discovery requests that Plaintiff sent to Defendants. Plaintiff reported that she created the requests, but Hoffman had told her some of the things to request. Plaintiff took an extended period of time to craft an answer when asked whether she had shared Defendants' discovery responses (which are subject to a protective order) with Mr. Hoffman, before eventually saying "I'm sure I have."

The Court asked Plaintiff how she got her thoughts to Hoffman and whether she hand wrote things to him. Plaintiff took an extensive time to contemplate the question before stating "I would probably say I wrote it out or sometimes, a lot of times, we

would discuss things." To make the question even clearer, the Court asked Plaintiff if, at any point, she physically typed anything out and gave it to Hoffman. Plaintiff reported that she "probably did" and that sometimes Hoffman would send back comments. The Court eventually asked if Plaintiff supplied the information and Hoffman prepared the documents. Plaintiff stated she "couldn't specifically say." Plaintiff finally admitted that there were no documents in the case that Hoffman did not assist with in some way.

Finally the Court questioned Plaintiff about the fact that Plaintiff has disclosed an expert witness in this case.[3] Plaintiff reported that attorney Hoffman is paying for the expert witness because Hoffman is using the expert witness report in a case before the Department of Labor. Plaintiff admitted that she had not paid the expert any money and has not sent Hoffman any money to help pay for the witness.

Following the hearing the Court informed both Plaintiff and Defense counsel that it would issue a written Order after consideration of all the testimony.

**II. Analysis**

The purpose of the IFP statute is to make it possible for a person to bring claims or assert defenses in federal court even if that person is unable to afford the fees and costs of litigation. *See* 28 U.S.C. § 1915(a)(1). "The opportunity to proceed in forma pauperis is a privilege provided for the benefit of indigent persons and the court system depends upon the honesty and forthrightness of applicants to ensure that the privilege is not abused." *Chung v. Dushane*, 2003 WL 22902561, *2 (N.D. Ill. 2003) (*citing Denton v. Hernandez*, 504 U.S. 25, 27 (1992)). "To prevent abuse, the privilege is guarded by a severe sanction: if 'the allegation of poverty is untrue, the court must dismiss the case.'" *La Tanya Palmer v. Dollar Tree*, 2012 U.S. Dist. LEXIS 145383, *3 (N.D. Ill. 2012) (*citing* 28 U.S.C. § 1915(e)(2)(A)). It is unquestioned that dismissal with prejudice is within the authority of the trial judge as an appropriate sanction for the filing of a false IFP application. *See Thomas v. GMAC*, 288 F.3d 305, 306 (7th Cir. 2002).

---

[3] The Court was originally perplexed by the fact that Plaintiff, who reported on her IFP petition that she had less than $100 available to her and did not have an attorney, was able to hire an expert witness. The Court also notes that the expert witness report submitted by Plaintiff is over 2,000 pages in length.

11

Plaintiff's testimony was completely unbelievable. As noted several times above, Plaintiff took multiple long pauses in an apparent attempt to formulate answers to what should have been simple questions to answer. Plaintiff's answers about her financial status were elusive (at best), and the Court often had to ask Plaintiff the exact same question several different ways before Plaintiff provided any answer. Even then, Plaintiff often answered in uncertain terms adding "probably," "maybe," or "I guess" as a qualifier to numerous answers.

There were several facts presented during the hearing, as well as during Plaintiff's deposition, showing that Plaintiff has not been honest and forthright about her financial situation. Plaintiff testified that she is somehow paying an $1,800 a month mortgage on a house worth at least $310,000 despite not being employed since 2013. While Plaintiff reported the house was in foreclosure at one point and testified to receiving money "from friends," Plaintiff also admitted that she is current on the mortgage payments and failed to provide the Court with any reasonable explanation as to how to she is able to pay an $1,800 a month mortgage without having any steady and consistent source of income. This claim becomes even more incredible considering Plaintiff reports being current on her $100 a month electric bill and her $100 a month cable bill. Plaintiff reported no change in her financial condition between 2015 and 2017. Instead, Plaintiff would have the Court believe that friends and family are providing her in excess of $2,000 a month just to pay 3 bills.[4] The Court finds this testimony is not credible.

During her deposition, Plaintiff testified that she was living off her savings and that she had money before going to Kenco. Plaintiff's IFP petition omitted the existence of a savings account, and reported cash on hand as "$100." When questioned by the Court, Plaintiff reversed course from her deposition and testified that she was not in fact living off her savings, while giving a confusing answer that failed to explain the inconsistency. Plaintiff tried to convince the Court that her deposition answer related to the fact that she was "at one point" living off her savings, but that she is not doing so

---

[4] This calculation does not account for any basic necessities, such as food.

anymore. Plaintiff was unable to explain the reason that she answered a question in the present tense ("how are you living?") with an answer that is no longer true. In short, Plaintiff clearly appeared to be trying to distance herself from her deposition answer.

Plaintiff also had no explanation for the deposits in her bank account in 2015. While Plaintiff may have "truthfully" represented the amount in her bank account on the day she filed her IFP petition, Plaintiff's account statement shows she had over $1,200 deposited into her bank account 4 days after she filed for IFP status. While Plaintiff has no explanation for the source of this money, the Court finds it highly unlikely that Plaintiff was coincidentally given over $1,200 the day after her IFP was filed of which she had no advance knowledge. One of these deposits, $477.53, was a very specific amount that appears to the Court to indicate a pay check or a social security payment, but Plaintiff denied both of these. The only explanation Plaintiff was able to provide for the over $1,200 in deposits was "money from the church." Plaintiff also had no explanation for why her mother's name was still on her checking account 10 years after her death.

Plaintiff reports that she cannot pay a $400 filing fee, yet openly admits to receiving royalties from an oil well interest, as well as a commercial, that at one point amounted to $8,000 or $9,000. Plaintiff attempted to convince the Court that she has not paid a water bill in two years, but that she has not had her water shut off. In short, Plaintiff's demeanor, as well as her inconsistent answers at her deposition and the hearing before the Court, reveals that Plaintiff has attempted to misrepresent her financial situation to avoid paying the filing fee.

While the Court recommends dismissal based on Plaintiff's untruthful representations regarding her financial situation, the Court also notes that Plaintiff's clearly untruthful answers regarding attorney Jordan Hoffman further support the Court's adverse credibility determination. Rule 11 obligates members of the bar to sign all documents submitted to the court, and to personally represent that there are grounds to support the assertions made in each filing. FED. R. CIV. P. 11. It follows that ghost-writing of pleadings on behalf of a pro se litigant "raises a serious matter of

unprofessional conduct." *Thigpen v. Banas*, 2010 U.S. Dist. LEXIS 11843, *3 (N.D. Ill. 2010). As such, "the practice of 'ghost-writing' briefs for pro se litigants is unethical and will not be permitted." *Chriswell v. Big Score Entm't, LLC*, 2013 U.S. Dist. LEXIS 10819, *12 (N.D. Ill. 2013).

Plaintiff was asked extremely simple questions about Hoffman's involvement in this litigation that she was unwilling to answer. The Court went as far as to ask Plaintiff specifically if she typed a 22 page document or if Hoffman typed the 22 pages for her. Plaintiff was unwilling to give the Court a straight answer. Plaintiff refused to answer whether Hoffman responded to the Motion to Dismiss. Plaintiff would not inform the Court whether she or Hoffman filed a Motion for Default Judgment. Plaintiff provided no answer when she was asked whether she or Hoffman filed the Motion to Strike Defendants' Answer. Plaintiff's recalcitrance contributed to the Court's credibility findings.

The additional information submitted by Defendants in their Motion to Supplement (#70) further supports the Court's conclusion that Plaintiff lacks credibility. Plaintiff testified during her deposition that she had never worked for attorney Hoffman in any capacity. *See* d/e 70-1, Madison Dep. Tran. 12:4-14. Defendants, however, reviewed the Illinois Department of Human Relations ("IDHR") file in the case of a related plaintiff and discovered that Madison identified herself as a legal representative for that plaintiff from Mr. Hoffman's law firm in communications to the IDHR. *See* d/e 70-1, IDHR Investigator Telephone Notes. Moreover, Plaintiff has testified throughout this litigation, including during the August 7, 2017 hearing, that she has not worked since being fired from Kenco in 2013. However, the IDRH information shows that Plaintiff was holding herself out not only as Hoffman's employee, but as a legal representative from Hoffman's firm in September 2015. *See* d/e 70-1, IDHR Investigator Telephone Notes. Therefore, Plaintiff either lied to the Court about her last date of employment or lied to the IDHR investigator about being employed by Hoffman; either way Plaintiff was untruthful about her employment.

**III. Conclusion**

For these reasons, the Court recommends that Plaintiff's case be dismissed for failure to be honest and forthright in her application to proceed in forma pauperis. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc., v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 22nd day of September, 2017.

s/ERIC I. LONG  
UNITED STATES MAGISTRATE JUDGE
