IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION



MARY MADISON,

      Plaintiff,

Case No. 15-cv-2290-CSB-EIL

V.

KENCO LOGISTIC SERVICES, et. al.,

      Defendants.

### PLAINTIFF'S OBJECTION AND ADDITIONAL INFORMATION AND CLARIFICATION

1. I received the order and recommendation on September 26, 2017.
2. I respectfully object to the conclusion that you reached.
3. As I shared with you in the hearing, the IRS has levied my assets.
4. Attached, you will find examples of the various levies placed. Exhibit 1
5. In the year of 2015 gas prices were so low, production was very low and the residuals were even lower on my royalties.
6. The IRS also levied other accounts that I had at the time as well.
7. Also, attached you will find IRS tax notice(s) CP71D totaling almost $300,000 in 2015 and the current IRS tax notice from 2017. Exhibit 2 and 2a respectively.
8. Also, attached you will find Health Coverage form 1095-B from the Illinois Healthcare and Family Services for Medicaid in 2015 Exhibit 3
9. Also, you will find notice about SNAP benefits and the award letter. Exhibit 4
10. Also, you will find an additional two (2) months of bank statements prior to the December 2015 one that was submitted initially, September 19-October 20, 2015 and October 21-November 18, 2015. Exhibit 5

11. Also, you will see attached requested images of deposits made from September 19, 2015 until December 7, 2015 for $100.00, $550.00 and $1,000.00. The total from this time period was $1,650.00. Exhibit 6

12. Also, you will see attached the images of the deposits made on December 9th and 11th. Exhibit 7

13. My inability to share with you what the deposit was on December 9th, 2015 of $477.53 was due to the fact that the bank could not provide me with a copy of what the transaction was as evidenced in Exhibit 6 and 7.

14. My ability to speak about what was in my savings was because I had contacted the credit union and was able to get that information prior to coming to the hearing. Exhibit 8

15. Also, here is the information on the Peoples Gas stock we spoke of. Exhibit 9

16. Also, I have attached an example of the credit card debit we spoke of; this one particular debt was totaled over $5,800.00 for one debtor and after checking I believe that my credit card debit total was over $16,000 for several debtors in 2015. Exhibit 10

17. The credit card debit was reduced by the Chase forgiving the debit on 12.31. 15 see Exhibit 10

18. I had additional debt at that time and to this date of over a $150,000.00 dollars.

19. Up until April of 2016, utilities were the only bills being paid.

20. As, I shared I took money out of my account and paid the utility bills at the currency exchange, as I could pay all of my bills there for the fee to one of the bills by phone.

21. Prior to everything coming unglued, I had the utility bills automatically drafted out of my account. However, due to my uncertain circumstances, I cancelled the automatic debit.

22. I shared with you that after I exhausted the money that I had, I began receiving help from my pastor, the church, friends and relatives.

23. A consistent and main contributor has been Yolanda Smith. Exhibit 11

24. Other contributors are my pastor and church, Kimberly McDaniel, Duana Smith, Stephanie Hart, Donnetta Denson, Edwin Walker, Carol Williams and Ben Brown along with a number of others. Exhibit 12

25. Those who loved and cared about me and that were aware of my situation made a conscientious effort to ensure that I would live past this situation, to ensure that I did not fall into deep despair and hopelessness. The y encouraged me to take care of myself, to comb my hair, to get out of the house, to live.

26. So for that, that was priceless to me and I am eternally grateful.

27. Also, attached is an example of an outstanding comed bill of $954.00 during the month of December 2015 that I just recently received a collection notice of. Exhibit 13
28. I filled the waiver out in the clerk's office right before closing and answered the questions in a hurry because it was close to closing.
29. I realize that ultimately that is no excuse and that I should have done a better job listing my outstanding obligations.
30. I could not have listed specific amounts of money received because the amounts of money were not consistent nor did they come on a consistent basis and it came from a variety of sources.
31. I had no way of knowing how much money, I was going to get or when I was going to get it.
32. Anything that I did not list was an oversight because it was not a consistent source of money or bills that were being consistently paid and did not come to mind.
33. There was no doubt in my mind and my circumstances that I was in an impecunious situation.
34. I was blessed and fortunate that the Lord made away for me, as inconsistent as it was.
35. I often have to remind myself to be grateful, that this too shall pass, and that it could be way worse than it is and has been.
36. However, my debts that I have referenced were great then and now and far exceed any money that I have gotten.
37. At this moment, I am underwater.
38. I never would have jeopardized my home or my wellbeing by not being current on my obligations, especially my mortgage, if I had of had the resources at the time to meet my obligations.
39. I was and still am concerned about my inability to adequately meet my obligations and maintain my home.
40. I pared down my expenses to the bare necessities to be paid and I am holding on by God's grace.
41. The day I filed the case was the last day to file the case based on when I received the Right to Sue letter.
42. Furthermore, it would have been simpler and less invasive to have just paid the money, than to tell the public you're broke or be shamed like this.
43. I am sorry that you thought that I was hiding something or not being truthful; however, a number of questions that you asked me I had not considered and frankly did not have all of the information at my remembrance to answer and in view of the fact that I was there because something was taken out of context, it made me cautious when I spoke.

44. Actually, I felt humiliated and embarrassed. I was overwhelmed. I have always been self-sufficient. This has been quite a twist for me, as I have always been on the giving end and now I am the recipient. I had a million thoughts running across my mind. Thoughts of this cannot be real. How bad off do you have to be in order to get help? Is this what people who don't' have resources go through who need help? Are you allowed to have any dignity? Are you supposed to look and act throwed away because you hit a rough patch in your life or because something happened? Or better yet, I been victimized unjustly, I have had all kinds of mistruths, fabrications and outright falsifications and accusations made up, I've lost my job, cant' get another one, seemingly blackballed, beat down because I stand up for myself and on and on. I felt appalled. I felt like how can they do all of this, look like their getting away with it and I'm on the hot seat.
45. I was thinking this is a lot, especially when all I wanted to do was to go to work so I can take care of myself.
46. I didn't know what to expect, what to bring or exactly how it would go at the hearing and because a statement that I made that was taken out of context and not followed up with the additional statements I provided to Jackson and Lewis that spoke of the assistance that I had received from others, as well as, about the royalties that I had received, I got a day in court.
47. My thought was that certainly, if I didn't have a job, steady and sufficient income that I could prove on the date and time I asked for help, I thought that I could get help and it would be okay.
48. I did not think that asking for help could get so convoluted.
49. I did not think I would have to talk about my family and their careers and finances, or decisions that they made. Who knew?
50. It had been over two (2) years, since I had been unemployed, when I filed the complainant in December 2015.
51. Also, I believed that I was asked to some effect how I had been living, since I left Mars Manteno.
52. My answer was responsive to the entire time and not specific to the date that I filed the case.
53. Certainly, if I had of had just say a mere lump sum of $20 or $30 thousand dollars, I could have fixed one situation that could have continued to bring me a revenue stream to meet my immediate living obligations.
54. Or, if I had of had the presence of mind, perhaps I could have better addressed my situations.

55. This entire experience has been humbling and I definitely have a greater respect for being merciful and kinder to people who have to depend on others for their sustainability, well-being or help.
56. Honestly, I was just trying to keep it together and not just loose it from being angry, violated and humiliated while I was employed and while I am seeking justice.
57. This has not been a cake walk or easy breezy, this has been an uphill journey. I have had some anxieties, concerns, worries, and feelings of despair and hopelessness.
58. This has given me a real opportunity to practice and exercise the faith in God that I professed to have.
59. I live in a state of amazement on how God has provided. Personally, I don't know of a person who happens to be walking down the street and gets chosen to be in a commercial.
60. Yolanda Smith and I were walking down the street and that happened to us. We were chosen and paid $20.00 for strolling across the street. We were told that they may use this footage in an upcoming commercial.
61. They indeed used it the first year and we both received residuals from it. We had no idea.
62. We had no idea, if it would ever be used again past that time.
63. Fortunately for me, it was and that is what has helped sustain me along with Yolanda sharing her portion with me as well.
64. Mrs. McCurry and I have overlapping issues and we have been witnesses for one another, I do not know how it came to be that I represented myself as an attorney, as I am only a witness.
65. I asked Mr. Hoffman to help me and certainly, I would not want to throw anyone under the bus that was kind enough to help me because he would not be in the predicament or the subject of conversation, if I had not brought my issues to him.
66. I would have loved all the help I could get, but I had to be grateful for the help I was given.
67. I have tried to develop my own in depth understanding of the issues and matters at hand and in this particular case look to Mr. Hoffman to make sure that my submissions are up to par.
68. My lack of resources stopped me from getting the help I sorely need/needed.
69. One thing that I can say is true in retrospect that being prose has been foolish and daunting, but I tried to make it work with what I had.
70. It is sad and a travesty, when you don't have the resources you need, to get the help that you need.

71. I am hopeful and prayerful that I have done a better job in detailing my situation, explaining the behaviours that seemed questionable to you and demonstrating that my overall financial picture is strained.

Respectfully submitted, **MARY MADISON**

By: _____
Pro Se
MARY MADISON
9758 S. Charles
Chicago, IL 60643

## CERTIFICATE OF SERVICE

Please take notice that on October 10, 2017, I, Mary Madison, hereby, certify that I did file an **Objection and Additional Information** with the Central District of Illinois Urbana Division in the foregoing matter of Case No. 15-cv-02290-CSB-EIL and have served the persons identified on the docket's service list via Notice of Electronic Filing generated by the Court's CM/ECF system.

Pro Se
MARY MADISON
9758 S. Charles
Chicago, IL 60643
773.297.9569


Kimberly J. Overbaugh         Jody Wilner Moran
Thomas R. Davies              Julia P. Argentieri
Harmon & Davies, P.C.         Jackson Lewis P.C.
2306 Columbia Ave             150 North Michigan Ave., Suite 2500
Lancaster, PA 17603           Chicago, IL 60601